KNOEFLER HONEY FARMS, A PARTNERSHIP, APPELLEE, V.
COUNTY OF SHERMAN, STATE OF NEBRASKA, BOARD OF
EQUALIZATION, APPELLANT.
243 N. W. 2d 760

Filed June 30, 1976. No. 40412.

Frederick R. King, for appellant.

Robert F. Martin, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This action involves the assessment of a personal prop-
erty tax by Sherman County, Nebraska, on certain col-
onies of honey bees brought into the State of Nebraska
after January 1 but before July 1 of 1972. The pro-
genitors of these colonies of honey bees had been pre-
viously taxed for the year 1972 in the State of Califor-
nia. Plaintiff, Knoefler Honey Farms, appealed to the
District Court from the action of the Board of Equali-
zation of Sherman County adding these colonies to the
plaintiff's assessment. The District Court found that the
assessment was illegal and directed the county assessor
to remove the colonies of honey bees from the tax
rolls. Sherman County has appealed.

The taxpayer, Knoefler Honey Farms, a partnership, operates honey farms for the production of honey and beeswax in the States of Nebraska and California. The taxpayer owned colonies or hives of honey bees in both states at various times. In the fall of 1971, at the end of the season in Nebraska, in accordance with its customary practice, the taxpayer retained 252 colonies of bees in Nebraska for the winter, transported approximately 800 colonies to California, and destroyed the balance of the colonies after harvesting the honey. The taxpayer reported the 252 colonies of bees for assessment in Sherman County, Nebraska, on the tax day of January 1, 1972. On March 1, 1972, the tax day in California, the taxpayer reported the 800 colonies of bees for assessment in that state, and thereafter paid the taxes due in that state for the year 1972.

A colony or hive of honey bees, for purposes here involved, consists of a queen bee and a group of living worker bees, regardless of the number of workers. The life span of the worker bees is 8 weeks, except during dormancy in the winter season. The life span of a queen bee is approximately 2 years. The queen lays approximately 1,000 eggs per day. While the bees are active, additional colonies are produced by the introduction of new queens. New queens are produced in a 2-week period from queen cells. For all practical purposes, at the end of any 8-week period of time the worker bees comprising a colony will be a completely different group of worker bees and only the queen survives.

The Nebraska colonies were dormant through the winter. Between January 1 and July 1 the number of those colonies increased by 750 additional colonies through a process of culling, dividing, and introducing new queens. In California meanwhile, the 800 colonies assessed on March 1, 1972, were divided shortly thereafter to make 4,800 colonies which were then brought to Nebraska. Of these, 1,365 were brought into Sherman County. As of July 1, 1972, the taxpayer reported to

the ASCS office that it had on hand in Sherman County as of that date 2,377 colonies of honey bees. When the assessor learned of the additional number of colonies above those reported on January 1, 2,124 colonies were added to the taxpayer's assessment as omitted property. The Sherman County Board of Equalization over taxpayer's protest, confirmed the assessment. The taxpayer appealed to the District Court and the District Court determined that the assessment of the 2,124 colonies, which represented the increase from the progenitor seed colonies previously taxed in Nebraska and California for the year 1972, was illegal, and directed the county assessor to remove the colonies from the tax rolls. Sherman County has appealed only from that part of the judgment which involves the 1,365 colonies of bees brought into Sherman County from California between January 1 and July 1, 1972.

Sherman County contends that under Nebraska statutes, where living creatures have been taxed as property in another state for the tax year involved and produce offspring, progeny, or descendants in that state which are brought into Nebraska before July 1, such increase must be added to the personal property assessment rolls in Nebraska and taxed in this state. The county relies on the provisions of section 77-1211, R. R. S. 1943. That section provides in part: "* * * when any person shall bring personal property into the state * * * after 12:01 a.m. on January 1 and prior to July 1 in any year, it shall be the duty of the owner to list and return such property for taxation that year, unless he shall show to the county assessor * * * under oath and by producing a copy of the assessment duly certified to * * * that the property has been listed for taxation for that year * * * in some other state or territory of the United States, * * *."

The county first argues that the copy of the California assessment was not duly certified as required, nor was it under oath, and, therefore, the taxpayer is not entitled

to have the property removed from the assessment. In this case exhibit 4 consisted of the California property tax statement and a canceled check of the taxpayer in payment of it. In addition, a partner of the taxpayer testified that the 800 colonies of honey bees were all the bees owned by taxpayer in California on the tax day, and that all the colonies of bees which the taxpayer brought into Nebraska were the product of those 800 colonies taxed in California.

Although there was no certified copy of the California assessment, the attorneys agreed that the assessment had been authenticated by telephone, and the county attorney advised the court that the exhibit was a true copy of the document on file in California. While the specified statutory method for proving that the property had been listed for taxation in California for that year was not literally followed, there was substantial compliance. The critical issue was whether or not the 800 colonies had been listed for taxation in California for 1972. The taxpayer had the burden of proving that issue and the evidence established that fact without contradiction.

The county's position rests on the contention that section 77-1211, R. R. S. 1943, mandates the taxation of the colonies of bees involved here. Certain evidentiary facts here are of primary importance in determining whether that statute authorizes or mandates the assessment made here. The administrator of the property tax division of the Department of Revenue of the State of Nebraska testified by deposition that it was the custom and practice in the State of Nebraska, with no exceptions that he knew of, that no livestock born within Nebraska after the 1st day of January (the tax date) is subject to assessment for tax purposes for that year. He also testified that livestock born after January 1 and brought into the state before July 1 are not assessed, and that these customs, usages, and practices have been in effect since 1922. The administrator also testified that in his opinion bees brought into Nebraska between January 1,

1972, and July 1, 1972, should be treated the same for assessment and taxation purposes as livestock. In substance, the evidence is uncontradicted that, at least when the progenitors of living creatures have been assessed for personal property taxes in Nebraska or any other state for a given tax year, their progeny or offspring, born, hatched, or brought into existence after the tax day, have not been in the past, and are not now, assessed for personal property taxation by any counties or the State of Nebraska. The Nebraska property tax manual provides that "hives of bees are to be assessed in the taxing district in which they are located on January 1 of each year."

Article VIII, section 1, Constitution of Nebraska, provides, among other things: "Taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises * * * (except motor vehicles). * * * The Legislature may provide that livestock shall constitute a separate and distinct class of property for purposes of taxation and may further provide for reciprocal and proportionate taxation of livestock for livestock located in this state for only part of a year."

So far as the evidence here is concerned, the plaintiff is the only taxpayer against whom Sherman County is attempting to enforce its interpretation of section 77-1211, R. R. S. 1943. Intentional and arbitrary discrimination against the property of one Nebraska taxpayer, while all other like property was systematically assessed at a much lower valuation, was held to be a violation of equal protection of the laws in Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340. The Supreme Court in that case stated again: " 'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " The Supreme Court held that it was

the right of a taxpayer, whose property alone was taxed at 100 percent of its true value, to have his assessment reduced to the percentage of value at which others were taxed, even though that was a departure from the requirement of the statute.

In Township of Hillsborough v. Cromwell, 326 U. S. 620, 66 S. Ct. 445, 90 L. Ed. 358, the Supreme Court said: "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment."

In the case before us, the evidence is clear that the assessment against the colonies of honey bees involved here was arbitrary and discriminatory, and that Sherman County's interpretation of section 77-1211, R. R. S. 1943, was not enforced against other taxpayers owning property of the same type, class, and character. We find no reasonable distinction for tangible personal property tax purposes between livestock and honey bees or other living creatures owned and used for commercial purposes.

The statutes of Nebraska, and particularly the language of section 77-1212, R. R. S. 1943, make it clear that the Legislature intended that personal property, properly assessed and held for taxes for that year in another state, and moved or brought into Nebraska before July 1, should not be assessed again for taxes for that year. Colonies of honey bees which were not in existence on January 1 which are brought into Nebraska from another state before July 1 are not subject to personal property tax assessment in Nebraska under section 77-1211, R. R. S. 1943, where their progenitors were listed and assessed for taxation for that year in another state.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

NEWTON, J., concurs in the result.