MAPCO AMMONIA PIPELINE, INC., APPELLANT, V. STATE BOARD
OF EQUALIZATION AND ASSESSMENT, APPELLEE.
MID-AMERICA PIPELINE COMPANY, APPELLANT, V. STATE BOARD OF
EQUALIZATION AND ASSESSMENT, APPELLEE.
TRAILBLAZER PIPELINE COMPANY, APPELLANT, V. STATE BOARD OF
EQUALIZATION AND ASSESSMENT, APPELLEE.
NATURAL GAS PIPELINE COMPANY OF AMERICA, APPELLANT, V.
STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.
471 N.W.2d 734

Filed July 10, 1991.    Nos. 90-871, 90-872, 90-873, 90-874.

William R. Johnson, of Kennedy, Holland, DeLacy & Svoboda; Bruce J. McWhirter, of Ross & Hardies; and Charlene H. Sinclair for appellants.

Don Stenberg, Attorney General, and L. Jay Bartel for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

These are appeals from the findings and order of the State Board of Equalization and Assessment (State Board) dated August 15, 1990, denying claims for property tax relief submitted by various centrally assessed and locally assessed claimants. Pursuant to our order of September 17, 1990, the

parties filed a "case stated" in accordance with Neb. Ct. R. of Prac. 5L (rev. 1989), separately setting forth the rulings of the State Board complained of by the appellants and the exceptions and contentions of the parties with respect to those issues.

The appellants are public service entities within the meaning of Neb. Rev. Stat. § 77-801.01 (Reissue 1990) and are centrally assessed for purposes of personal property taxation. Due to an identity of issues and counsel, we have consolidated the appeals of MAPCO Ammonia Pipeline, Inc. (case No. 90-871), Mid-America Pipeline Company (case No. 90-872), Trailblazer Pipeline Company (case No. 90-873), and Natural Gas Pipeline Company of America (case No. 90-874) for disposition.

Following our decision in *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *cert. denied* ____ U.S. ____, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990), but prior to our decision in *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991), the appellants appeared before the State Board requesting equalization of their real and personal property (1) with railroad rolling stock, which had been exempted from taxation by the passage of L.B. 7 on November 17, 1989 (codified at Neb. Rev. Stat. § 77-202(11) (Reissue 1990)), and (2) with center pivot and other irrigation systems used for agricultural purposes and equipment and machinery used for business purposes that had been excluded from the definition of real property by L.B. 1, also passed November 17, 1989 (now codified at Neb. Rev. Stat. § 77-103 (Reissue 1990)).

I

The record shows that the State Board convened on August 8, 1990, for the purpose of determining the value of the appellants' property for 1990 and to equalize such valuations for tax purposes within the state. The evidence presented at the August 8 hearing consisted of essentially the same record as that considered by the State Board in 1988 and 1989. Dennis Donner, a manager in the property tax division of the Nebraska Department of Revenue, testified he was of the opinion that 75 percent of commercial and industrial personal property remained exempt from taxation in Nebraska in tax year 1990.

In light of the passage of L.B. 7 on November 17, 1989, which exempted railroad rolling stock from taxation, the State Tax Commissioner did not value, assess, or tax any rolling stock of railroad or carline companies operating in Nebraska. The State Board also considered issues related to L.B. 1, which changed the statutory definition of "fixture." The appellants contended that L.B. 7 and L.B. 1 were unconstitutional.

During the August 8 hearing, the State Board declined to grant the relief sought by the appellants and set the statewide equalization rate at 92.13 percent of actual value. The State Tax Commissioner subsequently adjusted the total taxable value of the appellants' property and certified those values to the various counties using the 92.13-percent figure as determined by the State Board.

In its findings and order of August 15, 1990, the State Board described the appellants' requests as "purported claims for 'equalization' . . . which are, in fact, based on a request of the State Board to declare unconstitutional [certain] acts of the Nebraska Legislature . . . ." The State Board then found that it did not have jurisdiction to consider claims for equalization of property within a class of taxable property to property which is separately classified and exempted from taxation, and that the constitutionality of legislative acts granting exemptions from property taxation may not be raised before and decided by the State Board.

Although the State Board found it did not have subject matter jurisdiction to hear and decide various claims made based on the alleged unconstitutionality of certain legislative acts, several issues of this nature were presented to the State Board. These issues included the constitutionality of L.B. 7, pertaining to the classification of railroad rolling stock as tax exempt, and L.B. 1, which amended the statutory definition of "fixture."

We held in *Natural Gas Pipeline Co., supra* at 371, 466 N.W.2d at 470, that the portion of L.B. 7 exempting railroad rolling stock from taxation was unconstitutional because the Legislature had

no reasonable basis for treating railroads differently from other common carriers; therefore, the distinction, as a

classification and basis for an exemption from personal property tax, reflected in L.B. 7, result[ed] from special legislation, prohibited by Neb. Const. art. III, § 18, and violat[ed] the uniformity clause of Neb. Const. art. VIII, § 1.

With respect to L.B. 1, the State Board found that

the Legislature has broad powers to define the nature of property for tax purposes, so long as the definitions established are reasonable. . . . [T]he Board further finds that the evidence presented shows that the valuation of irrigated agricultural land (real property), is subject to taxation, and reflects the value of the annexed portion of the irrigation system; and that the sprinkler arm and power unit used in center pivot irrigation (or the piping and power unit used in gravity irrigation) are not annexed to land (real property) and are thus easily and readily removable without injury to the real property. Therefore, these particular items constitute personal property which is reasonably excepted from the definition of real property under LB 1. This personal property is classified separately and exempted from taxation pursuant to Section 77-202(6) [(Reissue 1990)], as agricultural income-producing machinery and equipment, a classification of exempt personal property upheld as constitutional in Stahmer v. State, 192 Neb. 63, 218 N.W.2d 893 (1974). Accordingly, the State Board finds claimants [sic] contentions that LB 1 unconstitutionally exempts certain "real" property (i.e., center pivot irrigation equipment) to be both contrary to the evidence and erroneous as a matter of law.

In their assignments of error, the appellants contend the State Board erred (1) in holding that it had no statutory or constitutional authority or jurisdiction to rule on the appellants' requests for relief, (2) in holding that L.B. 7 was constitutional, (3) in applying L.B. 1 and finding L.B. 1 constitutional, and (4) in failing to grant the appellants' requests for relief based on the absence of uniformity and proportionality of taxation, in violation of Neb. Const. art. VIII, § 1. The appellants further contend the taxation of their

property at 92.13 percent of actual value is in violation of the equal protection clause of U.S. Const. amend. XIV.

As the State Board now concedes, it did have jurisdiction to consider the appellants' requests for relief in these cases. In *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 815, 443 N.W.2d 249, 255 (1989), we held that "in an application before the [State] Board, a taxpayer may employ any factual or legal argument in support of his, her, or its position requesting equalization, subject to the final determination of questions of law on a de novo basis by this court on appeal."

The State Board also agrees that its finding that the portion of L.B. 7 exempting railroad rolling stock from taxation was constitutional was in error in view of our holding in *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991), that the portion of L.B. 7 exempting railroad rolling stock from taxation was unconstitutional.

The remaining issues in these appeals, therefore, involve (1) the constitutionality of L.B. 1 and (2) the validity of the appellants' arguments that the taxation of their personal property under Nebraska law violates Neb. Const. art. VIII, § 1, and the equal protection clause of U.S. Const. amend. XIV.

## II

Section 77-103, as amended by L.B. 1, provides:

The terms real property, real estate, and lands shall *mean* city and village lots and all other lands, and all buildings, fixtures, improvements, cabin trailers or mobile homes which shall have been permanently attached to the real estate upon which they are situated, mines, minerals, quarries, mineral springs and wells, oil and gas wells, overriding royalty interests and production payments with respect to oil or gas leases, units of beneficial interest in trusts, the corpus of which includes any of the foregoing, and privileges pertaining thereto, *and pipelines, railroad track structures, electrical and telecommunication poles, towers, lines, and all items actually annexed to such property, and any interest*

*pertaining to the real property or real estate.*

*The sole test for determining whether an item is a fixture or an improvement shall be whether there is actual annexation to the real property or real estate or something appurtenant thereto. Unless specifically enumerated in this section, real property and real estate shall not include machinery and equipment used for business purposes or center pivot or other irrigation systems of a type used for agricultural or horticultural purposes.*

(Amendatory language emphasized.)

The appellants contend L.B. 1 is unconstitutional (1) as an abuse of the Legislature's power to define, in that it tends to nullify certain provisions of Neb. Const. art. VIII, §§ 1 and 2, and (2) as it creates an arbitrary classification, in violation of Neb. Const. art. III, § 18. In every constitutional challenge, it is presumed that all acts of the Legislature are constitutional, and all reasonable doubts are resolved in favor of constitutionality. *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989). Bearing this standard in mind, we conclude that L.B. 1 is unconstitutional in its entirety.

As we noted in *Natural Gas Pipeline Co., supra*, L.B. 1 changed the statutory definition of "fixture," apparently to avoid the characterization of certain pipeline property as personal property rather than real estate, thus increasing the proportion of pipeline property presumably taxable as real estate under *Northern Natural Gas Co. v. State Bd. of Equal., supra*. (We note that in *Northern Natural Gas Co.*, the taxpayers did not ask for any relief regarding real estate.)

Although the Legislature has broad power to define property for tax purposes, its power to define is limited, since (1) the Legislature cannot abrogate or contradict an express constitutional provision and (2) the legislative definition must be reasonable, and cannot be arbitrary or unfounded. See, *State ex rel. Meyer v. Peters*, 191 Neb. 330, 215 N.W.2d 520 (1974); *Moeller, McPherrin & Judd v. Smith*, 127 Neb. 424, 255 N.W. 551 (1934).

The Legislature's power of definition may not be employed to nullify or circumvent the provisions of the Nebraska Constitution. In *State ex rel. Meyer v. Peters, supra*, we

considered legislation purporting to exempt "household goods" from taxation pursuant to Neb. Const. art. VIII, § 2, which provided: "Household goods and personal effects, as defined by law, may be exempted from taxation in whole or in part. . . ." The definition of "household goods" in the taxing statute at issue in *Peters*, however, included "major appliances either attached or detached to real property." See § 77-202(1)(d) (Reissue 1971). In other words, the statute purported to exempt property which would, under the common law of fixtures, be considered real estate. In holding that the Legislature could not constitutionally exempt such fixtures from taxation, we recognized the difficulty inherent in granting the Legislature unbridled definitional powers:

> Any definitional powers given to the Legislature are prefixed and limited. The power to define household goods and personal effects necessarily is limited to those articles which ordinarily would be understood to be embraced within that term. Certainly, it cannot be interpreted to give the Legislature power to include air-conditioning systems, furnaces, automobiles, or real estate within the term "household goods and personal effects." Since there must be a limit to such powers, it is reasonable to find the common law concepts serve as guides.

*State ex rel. Meyer v. Peters, supra* at 334, 215 N.W.2d at 524.

Similarly, in *Moeller, McPherrin & Judd v. Smith, supra*, the Legislature attempted to tax various items of intangible personal property as tangible personal property merely by defining them as such. This court struck down the attempted redefinition, observing:

> Section 77-104, Comp. St. 1929, which House Roll No. 9 purports to amend, provided that tangible property included all personal property possessing a physical existence, but excluding money, and then defined intangible property as all other personal property, including money. Section 2 of House Roll No. 9 attempts to amend this by providing that tangible property shall consist of two classes, and that class 1 shall be all personal property possessing a physical existence, and then

provides that class 2 of tangible property shall include stocks, notes, securities of foreign countries, accounts, judgments, liens of any kind, bonds, and all demands for labor, or other valuable thing, due or to become due. This introduces a new query, which is: May a legislature, under the guise of defining a word, do so with a definition which contravenes our Constitution, and which is not true or legal in fact? . . .

Can the legislature define and designate as tangible that which is, in fact and in truth, intangible? It may be admitted that the legislature has power to define words used by it, but is this an unlimited power, or is it subject to a reasonable construction? . . . In our opinion, there is a limit to the legislature's power to nullify and circumvent constitutional provisions by putting an arbitrary, but improper and unfounded, definition upon a certain word.

*Moeller, McPherrin & Judd v. Smith, supra* at 432-33, 255 N.W. at 555-56.

The definition found in § 77-103, as amended, tends to nullify or circumvent a provision of the Nebraska Constitution, in that Neb. Const. art. VIII, § 2, provides, "The Legislature may classify *personal property* in such manner as it sees fit, and may exempt any of such classes, or may exempt all personal property from taxation." (Emphasis supplied.) In this case, the Legislature has not so much "classified" certain items of personal property as it has arbitrarily declared the personal property owned by an unfavored group of taxpayers to be "fixtures," so that it is presumably taxable as real estate under our decision in *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989). Here, the Legislature has attempted to define and designate as a "fixture" that which is, in fact and in truth, personal property and has gone beyond the bounds of its legitimate powers under our Constitution in doing so.

In any event, personal property and real property are both "tangible property" under Nebraska law and must be equalized and taxed uniformly pursuant to Neb. Const. art. VIII, § 1. See, *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991); *Banner County v. State Board of*

*Equal.*, 226 Neb. 236, 411 N.W.2d 35 (1987); *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984); *Grainger Brothers Co. v. Board of Equalization*, 180 Neb. 571, 144 N.W.2d 161 (1966).

Neb. Const. art. III, § 18, provides that "where a general law can be made applicable, no special law shall be enacted." A legislative act can violate Neb. Const. art. III, § 18, as special legislation (1) by creating a totally arbitrary and unreasonable method of classification or (2) by creating a permanently closed class. *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991). The classification set forth in § 77-103, as amended, also is unconstitutional under article III, § 18, because it is not based on a real and substantial difference between "machinery and equipment used for business purposes or center pivot or other irrigation systems of a type used for agricultural or horticultural purposes" and similar machinery and equipment used for other purposes.

In *State ex rel. Douglas v. Marsh*, 207 Neb. 598, 608-09, 300 N.W.2d 181, 187 (1980), we held:

> While it is true that the Legislature may classify where reasonable . . . it may not do so in an arbitrary manner. In *City of Scottsbluff v. Tiemann*, [185 Neb. 256, 266, 175 N.W.2d 74, 81 (1970)], we specifically said: "It is competent for the Legislature to classify objects of legislation and if the classification is reasonable and not arbitrary, it is a legitimate exercise of legislative power. [Citation omitted.] The classification must rest upon real differences in situation and circumstances surrounding members of the class relative to the subject of the legislation which renders appropriate its enactment. [Citations omitted.] The power of classification rests with the Legislature and cannot be interfered with by the courts unless it is clearly apparent that the Legislature has by artificial and baseless classification attempted to evade and violate provisions of the Constitution prohibiting local and special legislation. [Citation omitted.] A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would

naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. *Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference.* [Citations omitted.]" (Emphasis in original.)

See, also, *Distinctive Printing & Packaging Co. v. Cox,* 232 Neb. 846, 443 N.W.2d 566 (1989).

In § 77-103, as amended by L.B. 1, the classification of agricultural and business machinery is based solely on use. In *State ex rel. Meyer v. McNeil,* 185 Neb. 586, 177 N.W.2d 596 (1970), this court was presented with the question of whether agricultural income-producing machinery and equipment used by any business which was required by law to report taxable income pursuant to the Internal Revenue Code constituted a reasonable classification for purposes of taxation. In that case, the Legislature attempted to separately classify for taxation purposes certain agricultural income-producing machinery and equipment. This method would have provided a different value for personal property specified in the act from that applied to all other tangible property in the same class.

In *McNeil, supra,* we observed that the establishment of two methods of valuation of property in the same class for taxation purposes results in a want of uniformity, contrary to Neb. Const. art. VIII, § 1. We held:

We necessarily find that the purported classification of property for tax purposes contained in the act does not rest on reasons of public policy, or any substantial difference of situation or circumstance that naturally suggest the justice or expediency of diverse legislation with respect to the objects classified. It is therefore an attempt to create a classification within a classification without any reasonable grounds for so doing other than to secure advantages for those falling within the purview of the act. It is violative of the uniformity provisions of Article VIII, section 1, of the Constitution. It is in effect special legislation in violation of Article III, section 18, of the Constitution.

*McNeil, supra* at 589-90, 177 N.W.2d at 599.

In the present case, "machinery and equipment used for business purposes or center pivot or other irrigation systems of a type used for agricultural or horticultural purposes" are tangible property which must be taxed uniformly both as to valuation and rate of tax. As we observed in *McNeil, supra* at 588-89, 177 N.W.2d at 598:

> There can be no difference in the method of determining valuation or the rate of tax to be imposed unless the separate classification rests on some reason of public policy, some substantial difference of situation or circumstance that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified.

When the Legislature attempted to remove pipelines from the category of personal property after our decision in *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), it apparently realized that its new test to determine what is real property would include center pivot or other irrigation systems used for agriculture or horticulture. The Legislature excluded irrigation systems used for these purposes from the definition of "real property," leaving them exempt "personal property" under § 77-202(6) (Reissue 1990) as "[a]gricultural income-producing machinery and equipment." The classification is not based on a real and substantial difference between "machinery and equipment used for business purposes or center pivot or other irrigation systems of a type used for agricultural or horticultural purposes" and the same machinery and equipment used for other purposes. The legislation is, therefore, violative of Neb. Const. art. III, § 18.

### III

Since both L.B. 1 and L.B. 7 are unconstitutional, we make four observations: (1) The ratio of "real" to "personal" pipeline property remains essentially unchanged since our decision in *Northern Natural Gas Co. v. State Bd. of Equal., supra*; (2) personal property and real property are both "tangible property" under Nebraska law and must be equalized and taxed uniformly pursuant to Neb. Const. art. VIII, § 1; (3)

the State Board erred in failing to assess or tax the rolling stock of railroad or carline companies operating in Nebraska in 1990; and (4) the appellants are entitled to the same tax treatment as the railroads, carline companies, and other centrally assessed taxpayers pursuant to Neb. Const. art. VIII, § 1, and our decisions in *Northern Natural Gas Co., supra*, and *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991).

To what relief are these taxpayers entitled? The appellants contend they should be "equalized" at zero percent for 1990 because the Tax Commissioner did not value, assess, or tax any rolling stock of railroad or carline companies operating in Nebraska in 1990. We conclude that this proposed remedy is inappropriate.

Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value. See, *Yellowstone Pipe Line Co. v. State Bd. Equal.*, 138 Mont. 603, 358 P.2d 55 (1960), *cert. denied* 366 U.S. 917, 81 S. Ct. 1095, 6 L. Ed. 2d 241 (1961). As we said in *Natural Gas Pipeline Co., supra* at 366, 466 N.W.2d at 467, "The purpose of equalization of assessments is to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax." Accord, *Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 403 N.W.2d 366 (1987); *Hacker v. Howe*, 72 Neb. 385, 101 N.W. 255 (1904). The process of equalization, therefore, cannot be applied to property that is not taxed. The appellants' remedy in this case, although based on the uniformity and proportionality requirement of Neb. Const. art. VIII, § 1, does not involve "equalization." Any language in our opinion in *Northern Natural Gas Co., supra*, which might be read as implying the contrary is hereby disapproved.

## IV

The issues raised in these appeals have evolved from the decision of the U.S. Court of Appeals for the Eighth Circuit in *Trailer Train Co. v. Leuenberger*, 885 F.2d 415 (8th Cir. 1988), which construed § 306(1)(d) of the Railroad Revitalization and

Regulatory Reform Act of 1976, Pub. L. 94-210, 90 Stat. 31, 54, codified as amended at 49 U.S.C. § 11503(b)(4) (1988) (the 4-R Act). Section 306(1)(d) prohibits the states from imposing a tax on transportation property when the tax "results in discriminatory treatment of a common carrier by railroad . . . ." The federal court considered personal property tax exemptions in determining whether there was discriminatory tax treatment of railroads in the Nebraska tax structure, and ultimately concluded that when tax exemptions applied to three-fourths of the commercial and industrial property in Nebraska, and did not apply to railcars, the tax system in Nebraska discriminated against Trailer Train in violation of § 306(1)(d) of the 4-R Act. For that reason, in *Trailer Train Co.*, the State of Nebraska was enjoined from "collection of the discriminating tax," 885 F.2d at 418, but was not prohibited from levying a lawful nondiscriminatory tax on a common carrier by railroad. The record shows that the same illegally discriminatory tax system that was at issue in *Trailer Train Co., supra, Northern Natural Gas Co., supra*, and *Natural Gas Pipeline Co., supra*, existed during the 1990 tax year.

U.S. Const. art. VI, cl. 2, the supremacy clause, provides that the U.S. Constitution "and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The supremacy clause of the U.S. Constitution binds the several states, subordinates state law; whether constitutional, statutory, or judicially enunciated, to a congressional enactment; and supersedes state law which conflicts with federal law. *Chapman v. Union Pacific Railroad*, 237 Neb. 617, 467 N.W.2d 388 (1991); *State ex rel. Douglas v. Karnes*, 216 Neb. 750, 346 N.W.2d 231 (1984). Cf., *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989); *State Bank v. Endres*, 109 Neb. 753, 192 N.W. 322 (1923). In other words, federal law controls over state law, including state constitutional law.

Applying this fundamental principle in *Northern Natural Gas Co. v. State Bd. of Equal., supra*, we concluded that disproportionality in taxation within a class of property

required this court to

> correct [a] constitutional inequity by lowering the complaining taxpayer's valuation to such an extent so as to equalize it with other property in the state. [Citations omitted.] This being the case, no logical reason exists why the same requirement of valuation reduction should not be imposed when the disproportionality is brought about by a final judgment of the federal court [*Trailer Train Co., supra*] exempting the personal property of the railroads and car companies from the imposition of a state tax.

232 Neb. at 815, 443 N.W.2d at 256. At this point, we note that in characterizing the federal court's action as "exempting" the property in question, we recognized only that the federal court had enjoined the collection of the particular tax that had been levied that year. Although a court may have the power to enjoin the collection of a tax, as was done in *Trailer Train Co.*, courts do not have jurisdiction to grant tax exemptions. In *Northern Natural Gas Co., supra*, we did not "exempt" the appellants' personal property from taxation, but remanded the matter to the State Board, noting that the appellants' unitary value, including both real and personal property, might need to be adjusted so as to achieve uniformity and proportionality of taxation in compliance with Neb. Const. art. VIII, § 1.

The situation presented to us in *Northern Natural Gas Co., supra*, was similar to that in *State Bank v. Endres, supra*, where the plaintiff, State Bank of Omaha, sought to enjoin the collection of taxes assessed against it under the provisions of Comp. St. § 5887 (1922).

In 1921, the Legislature classified property subject to taxation into two groups—tangible and intangible. Tangible property was required to be listed at its true value and assessed upon the mill rate levy. Intangible property, with certain exceptions, was required to be listed at its true value, and a tax was levied thereon at 25 percent of the mill rate levied upon tangible property. Regarding shares of stock in banking corporations, § 5887 required the officers of banks, loan and trust companies, or investment companies to deliver to the county assessor a sworn statement showing the number of shares of stock held by each person, the names and residences

of the stockholders, and the value of the stock. It was the duty of the assessor to assess the capital stock at the same rate as tangible property was assessed in the taxing district where the principal place of business of the bank was located. As the *Endres* court noted, the Legislature plainly intended to classify certain intangible property (bank stock) and place it for taxation purposes upon the same basis as tangible property, and the shares of stock in national banks were placed on the same basis as shares of stock in state banks.

At the time *Endres* was decided, federal law provided that state taxation of shares in the national banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State . . . ." U.S. Rev. Stat. § 5219 (2d ed. 1878). In *Merchants' Natl. Bank v. Richmond*, 256 U.S. 635, 41 S. Ct. 619, 65 L. Ed. 1135 (1921), the Court held that "moneyed capital in the hands of individual citizens" included bonds, notes, and other evidences of indebtedness in the hands of individuals, which were shown to come materially into competition with the national banks in the loan market.

Under § 5887, therefore, the stock of state and national banks located in Nebraska was being taxed on the same basis as tangible property, while "other moneyed capital in the hands of individual citizens" was subject to the lower tax on intangible property. Accordingly, the *Endres* court found that "the method adopted by our legislature of taxing shares of stock in banks, in so far as it applies to shares of national banks, is beyond the power of the legislature," as a violation of federal law. *State Bank v. Endres*, 109 Neb. 753, 757, 192 N.W. 322, 324 (1923).

Having concluded that the national banks could not lawfully be taxed on the same basis as tangible property, the court held that under Neb. Const. art. VIII, § 1, state banks could not be taxed on the same basis as tangible property:

> While the legislature has the undoubted right to make a reasonable classification of intangible property for the purposes of taxation, it would seem clear that a classification, the effect of which would be to tax its shares of stock four times as much as the shares of a national bank, would be an unreasonable exercise of its power, and

would be in violation of section 1, art. VIII of the Constitution, which, while giving the legislature power to classify intangible property, nevertheless requires that taxes shall be uniform as to class.

. . . [S]ection 5887, Comp. St. 1922, relating to the duty of the assessor in taxing shares of stock in banks, banking associations and trust companies, in so far only as it declares "such capital stock shall thereupon be listed and assessed by him at the same rate as tangible property . . ." is invalid as to national banks, because it conflicts with the act of congress forbidding states to tax shares of a national bank at a greater rate than is assessed upon other moneyed capital, and, with national banks excluded from its operation, it is also invalid as to state banks, because the latter would then be taxed at a higher rate than national banks, and therefore the taxation would conflict with that part of the state Constitution requiring taxes to be uniform as to class.

*Endres, supra* at 757-58, 192 N.W. at 324.

V

In the present case, the federal courts have determined that tax exemptions are to be considered in determining whether there has been discriminatory treatment under § 306(1)(d) of the 4-R Act. See *Trailer Train Co. v. Leuenberger*, 885 F.2d 415 (8th Cir. 1988). As discussed above, Nebraska's system of ad valorem taxation discriminates against railroads and carline companies, in violation of federal law, because "[w]hen the exemptions apply to three-fourths of the commercial and industrial property in Nebraska, and do not apply to rail cars, the tax system in Nebraska discriminates against [owners of rolling stock] and violates § 306(1)(d) of the 4-R Act." 885 F.2d at 418. The record before us shows that 75 percent of commercial and industrial personal property remains statutorily exempt from taxation.

As the State Board observes in its brief, the nontaxation of railroad rolling stock, which has given rise to the plethora of equalization claims presented before the State Board and this court in recent years, has resulted from the enforcement of the

antidiscrimination provisions of § 306(1)(d) of the 4-R Act. The impermissible discrimination forming the basis for the federal court decisions interpreting and applying the 4-R Act, in turn, resulted solely from tax exemptions provided under Nebraska law to various types of property not owned by railroads or carline companies.

The State Board correctly notes that the exemptions challenged by the appellants as discriminatory under § 306(1)(d) of the 4-R Act, consisting of agricultural income-producing machinery and equipment, agricultural products, and business inventories exempted under § 77-202(6) through (9), were upheld as legitimate classifications of personal property in *Stahmer v. State*, 192 Neb. 63, 218 N.W.2d 893 (1974). In *Stahmer*, this court justified the partial exemption from taxation of an entire class of personal property, agricultural machinery, holding that the power to exempt personal property from taxation granted by the 1970 amendment to Neb. Const. art. VIII, § 2, to wit: " 'The Legislature *may classify personal property in such manner as it sees fit, and may exempt any of such classes, or may exempt all personal property from taxation*' " (emphasis in original), 192 Neb. at 67, 218 N.W.2d at 896, prevails over the uniformity requirement of Neb. Const. art. VIII, § 1, and is subject only, if at all, to the reasonableness of the classification of exempt property. Significantly, no issues of federal law were raised by the parties or considered by this court in *Stahmer v. State*.

The enforcement of § 306(1)(d) by the federal court's enjoining the collection of taxes, and similar relief granted by this court pursuant to Neb. Const. art. VIII, § 1, has had the effect of making Nebraska's system of taxation increasingly discriminatory as to the remaining taxpayers. A comparable situation was presented in *Casey's Gen. Stores v. Nebraska Liq. Cont. Comm.*, 220 Neb. 242, 369 N.W.2d 85 (1985), where we reconsidered *Safeway Stores, Inc. v. Nebraska Liquor Control Commission*, 179 Neb. 817, 140 N.W.2d 668 (1966), in which this court upheld the constitutionality of a statute exempting hotels with more than 25 sleeping rooms from the statutory restriction that no person could have a beneficial interest in more than two liquor licenses. In *Safeway Stores, Inc.*, we

reasoned that the classification tended to promote stability in the liquor trade and temperance by curbing a threatened monopoly by chain stores. However, by the time this court heard *Casey's Gen. Stores, supra*, the Legislature had expanded the exemptions to include certain restaurants, some cities, and selected bowling alleys. In *Casey's Gen. Stores*, we concluded that the expanded exemptions rendered the reasoning in *Safeway Stores, Inc.*, obsolete, as it could no longer be said that the exemptions protected Nebraska operations. Therefore, in *Casey's Gen. Stores*, we concluded that the liquor license prohibitions violated the equal protection clause of U.S. Const. amend. XIV.

In the present case, Nebraska's failure to correct illegal discrimination in its tax structure has caused an increasing concentration of the tax burden on a shrinking group of taxpayers. We conclude that our reasoning in *Stahmer v. State, supra*, is now obsolete in light of subsequent developments in federal law, particularly the enactment of § 306 of the 4-R Act, effective in 1979, and numerous court decisions interpreting that legislation. As Judges White and Fahrnbruch observed in their concurring opinion in *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991), even if Nebraska's present classification of property as exempt and not exempt was to be found valid under the Nebraska Constitution, the system could not withstand muster under federal law. Federal law has eviscerated the portion of Neb. Const. art. VIII, § 2, that was at issue in *Stahmer v. State*. Accordingly, *Stahmer v. State* is overruled.

## VI

It is obvious that in order to reach any meaningful resolution of the problem presented to us, this court must address the legality of the exemption of three-fourths of the commercial and industrial property in Nebraska. See § 77-202(6) through (9). We determine that the appellants' remedy in this case is not for their property to be "equalized" at zero percent of actual value, but for it to be taxed uniformly and proportionately in compliance with Neb. Const. art. VIII, § 1. In their apparent zeal to avoid taxation entirely, however, the appellants have not

specifically questioned the constitutionality of the tax exemptions found in § 77-202.

In *State v. Goodseal*, 186 Neb. 359, 368, 183 N.W.2d 258, 263-64 (1971), *cert. denied* 404 U.S. 845, 92 S. Ct. 146, 30 L. Ed. 2d 82, this court held that although the parties ordinarily must raise constitutional issues before they will be considered on appeal, "where the invalidity of the act is plain, and such a determination is necessary to a reasonable and sensible disposition of the issues presented, we are required by necessity to notice the plain error in the premise on which the case was tried." The same is true in this case.

Pursuant to § 77-202(1), household goods and certain property owned by nonprofit religious, educational, charitable, horticultural, or cemetery organizations is exempt from taxation. The validity of these exemptions has not been challenged in this court and, to our knowledge, has not been challenged in federal court. Section 77-202 further provides:

> (6) Agricultural income-producing machinery and equipment shall be exempt from the personal property tax except: (a) Motor vehicles, as defined in section 60-301; (b) property assessed by the Tax Commissioner as provided in sections 77-601 to 77-623 [railroad property]; (c) property owned by parties deemed public service entities subject to the provisions of sections 77-801 to 77-803; and (d) any building or fixture, whether permanently attached to the land or not.

> (7) Business inventory shall be exempt from the personal property tax.

> (8) Feed, fertilizer, and farm inventory shall be exempt from the personal property tax.

> (9) Grain, seed, livestock, poultry, fish, honeybees, and fur-bearing animals shall be exempt from the personal property tax.

In *Trailer Train Co. v. Leuenberger*, 885 F.2d 415 (8th Cir. 1988), the U.S. Court of Appeals condemned as discriminatory Nebraska's constitutional and statutory scheme of taxing only 25 percent of personal property while exempting the remaining 75 percent and enjoined the State of Nebraska from collecting the discriminatory tax on railroad rolling stock. In *Northern*

*Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 815, 443 N.W.2d 249, 256 (1989), this court held that "if the [State] Board arbitrarily undervalues a particular class of property so as to make another class of property disproportionately higher, or achieves the same result because of legislative action," the complaining taxpayer was entitled to relief pursuant to Neb. Const. art. VIII, § 1. We also determined in *Northern Natural Gas Co., supra* at 815, 443 N.W.2d at 256, that the state, "by not taxing the personal property of railroads and car companies, although acting involuntarily and under compulsion of federal law, nevertheless, by complying with that mandate, has denied Enron equal protection of the law contrary to the 14th amendment to the U.S. Constitution."

As in *State Bank v. Endres*, 109 Neb. 753, 192 N.W. 322 (1923), federal law has now rendered Nebraska state law invalid under the Nebraska Constitution. We hold that the property tax exemptions enumerated in § 77-202(6) through (9) are unconstitutional under Neb. Const. art. VIII, § 1, in that they prevent the levy of taxes "by valuation uniformly and proportionately upon all tangible property and franchises."

## VII

In light of the foregoing, the order of the State Board of Equalization and Assessment is reversed and the cause remanded with directions to assess the property of the appellants and equalize its value as required by article VIII, § 1, of the Nebraska Constitution and the applicable statutes.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

FAHRNBRUCH, J., concurring.

I concur fully with the majority opinion. Although to reach its conclusion it was unnecessary for the majority to expressly rely upon the equal protection clause of the 14th amendment to the U.S. Constitution, that clause, nevertheless, might well be a viable consideration in future tax cases, as it has been in the determination of various tax cases since 1923. See, *Sioux City Bridge v. Dakota County*, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923); *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989); *State ex rel. Douglas v.*

*State Board of Equalization and Assm't*, 205 Neb. 130, 286 N.W.2d 729 (1979) (the equal protection clause of the 14th amendment is applicable to state tax legislation and imposes restraint upon state taxing power); *Knoefler Honey Farms v. County of Sherman*, 196 Neb. 435, 243 N.W.2d 760 (1976).

SHANAHAN, J., concurring in part, and in part dissenting.

Since the State Board of Equalization and Assessment has failed to carry out its duty to equalize taxable property, a nonperformance the same as noted and disapproved in *Natural Gas Pipeline v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991) (Shanahan, J., concurring), the equalization board's order must be vacated and these causes must be remanded for further proceedings. However, the grounds used by this court's majority today, striking down certain tax legislation, lack foundation in the Nebraska Constitution.

As a result of *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), Nebraska had only a judicial or common-law definition for "fixture" in reference to taxation of property, a definition which directed that three elements or factors determined whether an article was a fixture and, therefore, real estate, or whether the article was personal property. Under the judicial definition expressed in *Northern*, the three elements or factors were (1) annexation or attachment to real estate whereby an article was actually added to the real estate to form a unit comprised of land and the article fastened to the land, (2) appropriation to the use or purpose of the land to which the article was connected, and (3) whether the one who connected the article to the land intended that the article be part of the land after the article's annexation.

In view of *Northern* and to avoid the foregoing three-part judicially formulated test, the Nebraska Legislature, in L.B. 1, Neb. Rev. Stat. § 77-103 (Reissue 1990), eliminated appropriation to use and a connector's intention as determinative factors for a fixture and directed that "actual annexation" was the only determinant for a fixture. In that manner, the Legislature statutorily replaced and narrowed the previous common-law definition of a "fixture" expressed in *Northern*.

Can the Legislature define types of property for tax purposes? The Legislature's power to define is subject to two constitutional limitations: (1) The Legislature cannot abrogate or contradict a definitional provision in the Constitution and (2) the legislative definition cannot be arbitrary or without foundation in reality. See, *State ex rel. Meyer v. Peters*, 191 Neb. 330, 215 N.W.2d 520 (1974); *Moeller, McPherrin & Judd v. Smith*, 127 Neb. 424, 255 N.W. 551 (1934).

The Nebraska Constitution contains no provision specifying a definition for "real estate" or prohibiting the Legislature from defining "real estate." Thus, subject to limitations imposed by a constitution and reality, a legislature can statutorily change the usually accepted common-law definition of real estate and can designate subjects to be assessed and taxed as real estate. See, *Roberts v. Assessment Bd. of Rev. of New Windsor*, 84 Misc. 2d 1017, 375 N.Y.S.2d 988 (1975) (a legislature has the power to determine that certain types of property, ordinarily characterized as personal property, may be deemed real property within a tax statute); *United States v. Town of Marlborough, New Hampshire*, 305 F. Supp. 718 (D.N.H. 1969) (a legislature has the power, through proper classification, to designate personal property as real estate for purposes of taxation, although the property is real estate by common-law definition for all other purposes); *McCaslin v. DeCamp*, 248 Cal. App. 2d 13, 56 Cal. Rptr. 42 (1967) (for purposes of taxation, the definition of real property, expressed in tax statutes, controls irrespective of whether the tax definition conforms with definitions for real estate used outside the tax statutes); *Lantz Appeal*, 199 Pa. Super. 310, 184 A.2d 127 (1962) (a legislature can change the usually accepted definition of real estate and can designate the subjects to be assessed and taxed as real estate); *Matter of Beagell v. Douglas*, 2 Misc. 2d 361, 157 N.Y.S.2d 461 (1955) (a legislature has the power to classify and define what property is taxable as real property, including property which under the common law is personal property); *Portland Terminal Co. v. Hinds et al.*, 141 Me. 68, 39 A.2d 5 (1944) (a legislature has the authority, for the purposes of taxation, to use a valid definition by which real estate shall be assessed as personalty or that personalty shall be

taxed as realty).

Legislatures in other states have included within the definition of "real estate" various articles or items annexed to real estate and have utilized a definition identical or substantially similar to the definition contained in L.B. 1; for example, see, *Transcontinental Gas v. Bernards Tp.*, 111 N.J. 507, 545 A.2d 746 (1988) (gas transmission pipelines taxed as real property); *Pitre v. Louisiana Tax Com'n*, 493 So. 2d 196 (La. App. 1986) (pipelines as real property for tax purposes); *Fischbach & Moore, Inc. v. State Bd., Etc.*, 117 Cal. App. 3d 627, 172 Cal. Rptr. 923 (1981) (transmission lines and supporting structures properly classified as realty); *Wilmington Suburb. Water Corp. v. Board of Assess.*, 316 A.2d 211 (Del. 1973) (water pipelines as real property for taxation); *Transco Corp. v. Prince William Co.*, 210 Va. 550, 172 S.E.2d 757 (1970) (gas mains classified as real property for tax purposes); *Bangor-Hydro Electric Company v. Johnson*, 226 A.2d 371 (Me. 1967) (lines of electric light and power companies defined and classified as real estate for tax purposes); *People ex rel. Holmes Elec. v. Chambers*, 1 Misc. 2d 990, 125 N.Y.S.2d 436 (1953) (telegraph lines, wires, poles, and appurtenances defined as real property for tax purposes); *Railroad Co. v. Jefferson County*, 114 Kan. 156, 217 P. 315 (1923) (railroad structures); *Buffalo Gas Co. v. Volz*, 31 Misc. 160, 64 N.Y.S. 534 (1900) (tangible property of a gas corporation, consisting of mains and pipes, has no status which prevents the legislative option of defining the property as land, or as personalty, or classifying property anew); *People, ex rel. v. Com'rs of Taxes of N. Y.*, 101 N.Y. 322, 4 N.E. 127 (1886) (railroad structures as real estate); and *Board of Directors v. Reconstruction Finance Corp.*, 170 F.2d 430 (8th Cir. 1948) (pipelines defined as real property under Arkansas' tax law).

To maintain that only a court can define property for tax purposes, which is precisely the position of today's majority in MAPCO's case, is undeniable hubris and a claim of unique definitional capacity which is neither warranted nor countenanced under the Constitution.

Since the Legislature has the constitutional power to define types of property for taxation, the question is: Has the

Legislature, in its definition of "real estate" in L.B. 1, acted reasonably, that is, consistent with reality and not arbitrarily? A very real and substantial difference separates the items of property classified as "real estate" in L.B. 1, such as pipelines and telecommunications towers, from the property excluded from "real estate," such as a center pivot irrigation system. That difference between the various items of property was described and pointed out in *Natural Gas Pipeline v. State Bd. of Equal.*, 237 Neb. 357, 390-91, 466 N.W.2d 461, 481 (1991) (Shanahan, J., dissenting):

> When used on real estate, each of the items added in the expanded definition of "real estate" in § 77-103 (Reissue 1990) is rendered immobile and becomes stationary as the result of some physical connection to the real estate. For instance, a pipeline is usually buried in the ground which it crosses, while structures such as electrical and telecommunications poles and towers are immobile when part of the structure is buried in the earth to support the remaining part above ground or when such items are securely fastened to buried foundations for additional support.
>
> . . . Irrigation systems used for agricultural and horticultural purposes may also consist of movable surface pipes as conduits for water sprayed from sprinklers attached to the pipes, thereby allowing mobility from one irrigation site to another. Therefore, mobility of a center pivot and other surface irrigation system distinguishes the foregoing property from those items which the Legislature has defined as "real estate" in L.B. 1.

Anyone who cannot distinguish between microwave towers and center pivot towers in an irrigation system has less than a working knowledge about center pivot irrigation systems. More than likely, a center pivot irrigation system qualifies as personal property under the common-law definition of "fixture" recognized in *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989). In any event, someone out there had better tell creditors who repossessed and hauled away center pivot systems from debt-ridden irrigators that

those creditors have replevied real estate—quite a legal phenomenon to say the least. In the final analysis, this court's conclusion that the Legislature acted arbitrarily in defining "real estate" for L.B. 1 lacks valid and rational premises. The vice of arbitrariness, which this court now levies at the Legislature in conjunction with the legislative definition of "real estate," is the very vice infecting the majority's conclusion, which is, at most, a result without a stated reason or rational foundation.

Arbitrariness in the majority's opinion is not so disturbing as is the inexorable destiny of property classifications and tax exemptions in Nebraska. The majority's focal point is Neb. Const. art. VIII, § 1, the "uniformity" clause, that is, "Taxes shall be levied by valuation uniformly and proportionately upon all tangible property . . . ."

However, before consideration of the majority's view on the "uniformity" clause, there is the majority's misunderstanding of *Casey's Gen. Stores v. Nebraska Liq. Cont. Comm.*, 220 Neb. 242, 369 N.W.2d 85 (1985), a misperception which must be set straight. In *Casey's*, we observed that a statutory limitation on the number of liquor licenses was a legitimate state policy, namely, trade stability and temperance, and, therefore, a proper subject for legislation. However, as noted in *Casey's*, subsequent legislation, which eliminated restrictions on many licensees, effectively expanded the number of licenses to such a level that any restriction on the number of licensees no longer served a valid governmental interest. See *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989) (when a fundamental right or suspect classification is not involved in legislation, a legislative act is a valid exercise of a state's police power, if the act is reasonably related to a legitimate governmental interest). To adhere to the view that classification of property and tax exemptions serve no legitimate governmental purpose, which was the basis for the conclusion in *Casey's*, is so farfetched that comment is unnecessary beyond the expression that *Casey's* is absolutely inapplicable to MAPCO's case.

Also, because the majority focuses on the "uniformity" clause, another part of the Nebraska Constitution is brought to

bear in MAPCO's case, namely, Neb. Const. art. VIII, § 2, which provides in part: "The Legislature by general law may exempt property owned and used exclusively for educational, religious, [or] charitable . . . purposes . . . ." Section 2 of article VIII further provides in part: "The Legislature may classify personal property in such manner as it sees fit, and may exempt any of such classes, or may exempt all personal property from taxation."

Considering the "uniformity" clause in § 1 of article VIII in relation to tax exemption authorization in § 2 of article VIII, the majority pounces on *Stahmer v. State*, 192 Neb. 63, 218 N.W.2d 893 (1974), in which this court held that after allowance for exemptions authorized by the Legislature pursuant to § 2 of article VIII, tangible property, which is subject to taxation, must be taxed uniformly in accordance with § 1 of article VIII. By ousting *Stahmer* from Nebraska's interpretative decisions concerning tax classifications and exemptions in relation to the uniformity clause, this court today reaches the utopian view and constitutionally indefensible position that uniformity in taxation is equated with and, therefore, requires absolute equality, since tax classifications and exemptions undermine equal treatment of property in Nebraska's tax structure. In the majority's view, since absolute equality of treatment is essential to uniformity in taxation, all tangible property must be treated the same for tax purposes, that is, taxed equally or not taxed at all. Moreover, according to the majority, Nebraska's structure of property taxation, which includes classifications and exemptions, cannot "withstand muster under federal law." That is a preview of coming attractions to be shown by this court.

None can realistically and justly contend that any within a valid class should be treated differently from the rest of the class. What, then, is the real meaning and effect of this court's disdain for classifications of property, including the distinction between taxable and exempt tangible property? Carried to the logical and inevitable conclusion, judicial rejection of classification for tangible property means that residential property must be valued and taxed the same as commercial property; hence, a home must be valued the same as an

industrial tract or a railroad's right-of-way.

What is more frightening and disconcerting is the fact that the majority, without any litigant's request or suggestion, has struck down and cut out the exemptions in Neb. Rev. Stat. § 77-202(6) to (9) (Reissue 1990) and thereby abolished 4 of Nebraska's 13 categories of tax exemptions for tangible property, action which the majority then characterizes as a "meaningful resolution to the problem presented" in MAPCO's case. While those excisions from § 77-202 may be "meaningful," by no stretch of the imagination is the majority's action a "required or plausible resolution." In a stroke of poetic justice, however, the majority has abolished the tax exemption for previously exempt business inventories of several appellants in these tax cases, and other businesses similarly situated, which have challenged the status of various tax exemptions in Nebraska's personal property tax system. Defeat is snatched from the jaws of victory.

Certainly, not many will lament the demise of tax exemptions for honeybees and fur-bearing animals, see § 77-202(9), which this court has struck down today. Although this court has taken the sting out of the bee exemption and skinned the furry animal exemption, one has to wonder what motivated the court to withhold a coup de grace to some of the other tax exemptions in § 77-202. Constitutional principle or personal predilection? For instance, § 77-202(10) provides a tax exemption for personal property of companies which qualify under Neb. Rev. Stat. §§ 77-4101 et seq. (Reissue 1990), Nebraska's Employment and Investment Growth Act, the much publicized L.B. 775 enacted in 1987. Yet, the exemption under § 77-202(10) remains unscathed and intact. There is no logical and legal reason why exemptions under L.B. 775 are not constitutionally condemned and disallowed under the majority's view and volunteered action abolishing other tax exemptions in § 77-202.

According to the majority, the Legislature has thwarted "the levy of taxes 'by valuation uniformly and proportionately upon all tangible property . . .' " as a consequence of exemptions authorized by the Constitution. If exemptions pertaining to bees, fur-bearing animals, agricultural machinery, and business

inventories are judicially abolished, which is the feat accomplished by this court's majority today, what about exemptions regarding household furnishings and personal effects, which are presently tax exempt under § 77-202(1)(d)? Obviously, judicial abolition of the tax exemption for household furnishings and personal effects would hit pretty close to almost everyone's home, regardless of one's occupation or station in life. However, for the time being and for some undisclosed reason, the majority has elected to spare the "household goods and personal effects" exemption from the gratuitous chain saw surgery performed on other exemptions in § 77-202. In any event, the legacy of the majority's view is inevitable taxation of household furnishings and personal effects. It is only a matter of time, if logic has any place in the tax decisions of this court.

Then, there is the exemption for tangible property of educational, religious, and charitable organizations. In *Indian Hills Comm. Ch. v. County Bd. of Equal.*, 226 Neb. 510, 412 N.W.2d 459 (1987), we recognized that a constitutional provision for tax exemption of property owned by a religious organization is not a matter of right, automatically extended as a self-executing right under the Nebraska Constitution, but depends entirely on legislative grace in the form of exemptive legislation. However, in the majority's view, again carried to its logical and inevitable conclusion, tax exemption for tangible property of a religious organization is anathema and subject to excommunication from the body of tax exemptions, since the majority dictates that exemptions destroy the absolute equality which is essential for acceptable uniformity in taxation of tangible property, both real and personal. The tax exemption dominoes begin to fall. Would anyone have the audacity to challenge the present tax exemption for tangible property of a charitable, educational, or religious organization? Who would dare challenge the tax exemption of a hospital operated for charitable purposes? A university owned by an organization other than the State of Nebraska? Tangible property used exclusively for a religious purpose, even a church, synagogue, or other place of worship? Sound highly improbable, perhaps impossible? As Al Jolson quipped, "You ain't heard nothin'

594

yet, folks."

All of which brings us back to the majority's focal point, the uniformity clause in Neb. Const. art. VIII, § 1. So long as the majority's view about classification and tax exemptions exist, the uniformity clause is irreconcilable with the constitutional authorization for tax classification and exemption from taxation. Eventually, the house of cards built on classifications and tax exemptions must collapse if the uniformity clause is to subsist and endure as viewed and desired by this court's majority. Amendatory augmentation of the Constitution, adding clause after clause and provision upon provision, while leaving the uniformity clause, as presently construed by this court's majority, at odds with tax classifications and exemptions, is quite likely no solution, but a pollyanna approach to a Nebraska crisis that will soon reach epoch-making proportions, if such level has not already been reached. If classifications related to taxation and exemptions are totally incompatible with the uniformity clause, something must give way. Since the uniformity clause, as construed by this court's majority, and all classifications and exemptions, destined to be categorically rejected by the majority of this court, are absolute contradictions in Nebraska's present tax structure, one of those aspects of Nebraska taxation, namely, the uniformity clause or classifications and exemptions, must cease so that some semblance of order is substituted for the current chaos. That decision is left to the people of Nebraska and their Legislature.