[Civ. No. 58675. Second Dist., Div. Two. Apr. 1, 1981.]

FISCHBACH & MOORE, INC., et al., Plaintiffs and Appellants, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

628

COUNSEL

Jack B. Silver for Plaintiffs and Appellants.

George Deukmejian, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

OPINION

**FLEMING, Acting P. J.**—The issue is whether materials purchased by plaintiffs-contractors for construction of an electrical transmission line for an agency of the United States are taxable under the California Sales and Use Tax Law (Rev. & Tax. Code, §§ 6001, 6051, 6201).

In 1962 plaintiffs contracted with the Bureau of Reclamation, United States Department of the Interior, to construct a transmission line in the Central Valley. The bid price in rounded figures was $10,611,000. Included among the contractors' expenses were $2,323,000 for purchase of aluminum transmission cable, $522,000 for transmission line insulators and $2,473,000 for fabricated steel used to construct support towers. On these purchases of materials plaintiffs gave the sellers resale certificates. Plaintiffs contracted and acted on the assumption that these expenses were tax-exempt sales to the United States, a belief based on an August 1960 opinion of the State Board of Equalization dealing with the application of sales and use taxes to construction of transmission lines. The opinion declared that the board regards transmission lines as personal property, that "contractors installing such lines are retailers, and the tax applies to their gross receipts," but "[w]hen the lines are sold to the United States, the sale is exempt under Section 6381, and the sale to the contractor of the materials becoming a part of the lines is exempt as a sale for resale." This exemption, however, does not apply to materials used for concrete foundations, as to which the contractor is the consumer of the materials and pays a use tax.

On the basis of this and comparable opinions by the State Board of Equalization and the California Attorney General, the United States and plaintiffs concluded that although tax was payable on materials used for ground-level installations in that plaintiffs were consumers of such materials, no tax was payable on materials used above ground in the construction of the Central Valley transmission line, because with respect to those materials plaintiffs were retailers, and retail sales to the United States were tax-exempt. (Rev. & Tax. Code, § 6381.) The rationale for this distinction was that ground-level installations became improvements to real property, while above-ground installations remained personal property; therefore, sales of ground-level materials were taxable to the contractors as consumers of materials used to improve real property (§§ 6384, 6007.5), while sales of above-ground materials were exempt from tax as personal property sales to the United States (§ 6381).

Subsequent to the completion of plaintiffs' contract in 1965, the distinction between real and personal property in the taxation of transmission lines came under general challenge, both in the Legislature and in the courts. Accordingly, in 1967 the board filed a notice of determination of sales and use tax due from plaintiffs on the construction of the Central Valley transmission line, asserting it was filing the notice to prevent the running of the statute of limitations and protect the interests of the state should the courts ultimately hold that construction of transmission lines constituted improvements to real property. Thereafter, the courts in a series of cases repudiated the administrative classification of permanently installed transmission lines and towers as personal property for purposes of sales and use tax, and ruled that for tax purposes transmission lines in their entirety were improvements to real property, as they would be for other purposes under general principles of property law. (*Chula Vista Electric Co. v. State Bd. of Equalization* (1975) 53 Cal.App.3d 445 [125 Cal.Rptr. 827]; *A.S. Schulman Electric Co. v. State Bd. of Equalization* (1975) 49 Cal. App.3d 180 [122 Cal.Rptr. 278]; *C.R. Fedrick, Inc. v. State Bd. of Equalization* (1974) 38 Cal.App.3d 385 [120 Cal.Rptr. 434]; *King v. State Bd. of Equalization* (1972) 22 Cal.App.3d 1006 [99 Cal.Rptr. 802]; see also Rev. & Tax. Code, § 6106.5.)

In August 1976, subsequent to the foregoing court rulings that transmission lines were improvements to real property, the board redetermined the amount of sales and use tax owed by plaintiffs on their construction contract as $212,000 tax plus $179,000 interest. In February

1977 plaintiffs paid the full amount of the redetermination and thereafter filed an action for refund. The trial court ruled adversely to plaintiffs, and plaintiffs have appealed.

Plaintiffs argue the invalidity of the board's protective notice of determination, the existence of unconstitutional discrimination against contractors doing business with the United States, the unreasonableness of the classification of transmission lines as real property, and the board's estoppel to collect the tax because of its administrative ruling that no tax was due. While some of the foregoing arguments present nice questions of law, we think most of them are academic in the present proceeding. We see no valid objection to the protective determination. In the taxation of transmission lines we find no discrimination against contractors contracting with the United States. (*United States v. County of Fresno* (1977) 429 U.S. 452, 464-465 [50 L.Ed.2d 683, 693-694, 97 S.Ct. 699].) Rather, United States contractors were the beneficiaries of favorable treatment, and whatever discrimination existed went the other way (Rev. & Tax. Code, § 6381), for a private contractor who gave his suppliers certificates of resale might have to pay tax on his entire gross receipts, including costs of fabrication and installation. (Cf. *Gen. Elec. Co. v. State Bd. of Equalization* (1952) 111 Cal.App.2d 180 [244 P.2d 427].) We address ourselves to two points which in our view control the disposition of this cause: (1) status of transmission lines as real property improvements, and (2) the issue of estoppel.

■ 1. *Real Property Improvements.* The consistent holdings of the courts in the cases previously referred to, as well as the overwhelming state of the law in other areas, lead inarguably to the conclusion that transmission lines and supporting installations are properly classified as improvements to real property. Under such classification a contractor who has issued retail certificates to his suppliers for materials used to construct transmission lines becomes the consumer of the materials and pays a use tax. Whether the materials are used at ground level or, as in the instance of cables, insulators, and support towers, at above-ground level, all his purchases are for his own consumption. Although on future dismantlement of a transmission line some of its materials may be salvageable for other use, such a possibility does not vitiate the basic conclusion that construction of a transmission line constitutes an improvement to real property. Squarely in point is *Chula Vista Electric Co. v. State Bd. of Equalization* (1975) 53 Cal.App.3d 445 [125 Cal.Rptr. 827], where the court held that even though electrical trans-

mission cable was salvageable, its installation pursuant to a United States contract constituted an improvement to real property. Under this view, plaintiffs' purchases of aluminum cable, electrical insulators, and fabricated steel towers, for which they gave resale certificates, were purchases of materials consumed by plaintiffs in the performance of a contract to improve real property (Rev. & Tax. Code, §§ 6007.5; 6384). As the users of those materials plaintiffs were required to pay use tax (Rev. & Tax. Code, § 6094).

■ 2. *Estoppel.* The board argues, and we agree, that the state is not estopped from collecting a tax which was due and owing, even though the state's representatives may have previously adopted an incorrect interpretation of the law and advised the public that no taxes would become due on a particular transaction or transactions. (*Market St. Ry. Co.* v. *Cal. St. Bd. Equal.* (1955) 137 Cal.App.2d 87, 100, 103 [290 P.2d 20].) Under well-settled rules of law state officers and state agencies have no power to estop the state from collecting a validly owed tax. The reasons behind such a rule are deeply imbedded in our governmental structure, which is designed to discourage corrupt collusion between government officers and taxpayers to the prejudice of the state's revenues. We, therefore, reject plaintiffs' argument that the board is estopped from collecting the tax, even though its representatives had previously advised plaintiffs no tax would become due.

■ However, our conclusion that the state may collect a tax which is due and owing does not necessarily imply that it may collect interest on the tax. On this subject we find enlightening *Market St. Ry. Co.* v. *Cal. St. Bd. Equal.* (1955) 137 Cal.App.2d 87 [290 P.2d 20]. There the State Board of Equalization advised Market Street Railway that no tax would become due on the sale of its tangible personal property to the City of San Francisco. At that time an interpretative ruling of the board supported this conclusion. Later, the board sought to collect tax, penalties, and interest on the sale, asserting that its former ruling had been erroneous. The court upheld the board on its collection of the tax, but found the latter estopped from collecting penalties and interest, in that the taxpayer had justifiably relied on information from the board when it failed to file a return and pay the tax. The court based its conclusion in large part on the earlier ruling in *La Societe Francaise* v. *Cal. Emp. Com.* (1943) 56 Cal.App.2d 534 [133 P.2d 37], which held that while estoppel did not prevent the collection of unemployment insurance taxes owed by a charitable institution, even when the latter had been erroneously advised by an administrative ruling that it was exempt

from tax, it did prohibit a government claim for penalties and interest. A taxpayer should pay as much as it would have to pay originally, said the *La Societe Francaise* court, but it should not pay more because it relied on an erroneous administrative ruling. From these two cases we deduce a general rule that a taxpayer is not required at its peril to know that a state's administrative rulings are erroneous. Although the taxpayer's liability for the original tax remains, its liability for penalties and interest may be excused.

We think the *Market Street Railway* and *La Societe Francaise* rule applies to the cause at bench. All parties acted in reliance on a specific declaration by the board that no tax would be payable. When the courts determined that this declaration was based on an erroneous interpretation of law and hence incorrect, an unpaid tax of $212,000 materialized. That tax was properly collected and paid. However, we see no reason why plaintiffs-taxpayers should pay extra because the board made a mistake. Although no penalties were assessed, the board demanded and collected $179,000 as interest on the unpaid tax. We think collection of interest on an unpaid tax whose existence the board itself failed to recognize was inequitable and unjustifiable and that the taxpayer is entitled to recover amounts paid as interest.

The judgment of the trial court gave plaintiffs nothing. To the extent this reflected plaintiffs' liability for the original amount of tax it was correct. But to the extent it denied plaintiffs' claim for return of interest, it was erroneous. We therefore reverse the judgment, remand the cause, and direct the trial court to enter judgment in favor of plaintiffs for $179,225.29 plus interest at the legal rate from February 2, 1977.

Compton, J., and Beach, J., concurred.