[No. A088483. First Dist., Div. Two. Jan. 5, 2001.]

WAYNE E. JACKSON, Plaintiff and Appellant, v.
DEPARTMENT OF JUSTICE, Defendant and Respondent.

**COUNSEL**

Rockhill, Schaiman & Carr and Michael E. Adams for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Arthur D. Taggart and Kent D. Harris, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**KLINE, P. J.**—This case requires us to interpret provisions of the Roberti-Roos Assault Weapons Control Act of 1989 (Pen. Code, §§ 12275-12290) (the AWCA or Act),[1] which have not heretofore been judicially construed. The questions presented are whether, under that Act, a licensed gun dealer can acquire, possess and sell unregistered assault weapons and whether he may hold assault weapons registered to others for sale on consignment. The trial court answered both questions in the negative and concluded that petitioner's violations of the AWCA justified denial of his application to renew his assault weapon permit. The trial court ruled as well that petitioner received constitutionally adequate notice of the administrative agency's interpretation of the AWCA. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, Wayne E. Jackson, who does business as Wayne's Gun Shop, is a licensed gun dealer (§§ 12071, 12290, subd. (c)) in Dublin who for many years possessed permits and licenses from respondent Department of Justice authorizing the possession, transportation or sale of a variety of dangerous weapons,[2] including assault weapons.[3] By letter dated June 26, 1997, respondent notified petitioner that his application to renew his assault weapon permit had been denied, and that upon the expiration of his existing permit on May 14, 1997, he would be "prohibited from selling, leasing, transferring, purchasing, transporting, repairing, or otherwise possessing assault weapons

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

[2] Regulations that implement the AWCA define "dangerous weapons" as "machine guns as defined in Penal Code section 12200, destructive devices as defined in Penal Code section 12301, short-barreled shotguns and short-barreled rifles as defined in Penal Code section 12020, and assault weapons as defined in Penal Code section 12276." (Cal. Code Regs., tit. 11, § 971, subd. (m).)

[3] The other dangerous weapons petitioner was licensed or permitted to possess or sell were machine guns, destructive devices, short-barreled shotguns and rifles, and tear gas.

. . . ."[4] Petitioner's application to renew his permit had been denied, the letter stated, because his acquisition, possession and transfer of specified unregistered assault weapons, and his holding of specified assault weapons registered to others for sale on consignment, violated section 12280, subdivision (a)(1), part of the AWCA, regulations implementing the Act promulgated by respondent Department of Justice (Cal. Code Regs., tit 11, § 975.5) and the conditions stipulated on his assault weapon permit.

Petitioner commenced a timely administrative appeal from denial of the permit, and hearings before an administrative law judge (ALJ) were held in September 1998. On September 30, 1998, the ALJ affirmed the denial. The ALJ determined that by acquiring, possessing and selling unregistered assault weapons petitioner violated section 12280, which, with exceptions not here applicable, prohibits the possession or sale of unregistered assault weapons, and that by holding assault weapons registered to others for sale on consignment he also violated section 12285, subdivision (b)(1), which the ALJ interpreted as meaning that a licensed gun dealer who holds a permit authorizing the "retail sale" of assault weapons cannot sell assault weapons he or she does not legally own. The ALJ also determined that, under administrative regulations implementing the AWCA (Cal. Code Regs., tit. 11, §§ 975.2 and 975.5), said violations constituted grounds for revocation or denial of an assault weapon permit.[5] Respondent adopted the ALJ's proposed decision on October 20, 1998, and it became effective 10 days later.

On November 30, 1998, petitioner sought a writ of administrative mandate (Code Civ. Proc., § 1094.5) from the Contra Costa County Superior Court, claiming that respondent misinterpreted the applicable provisions of the AWCA or, if its interpretations were valid, that petitioner was denied his "constitutional due process right to fair and reasonable notice of said interpretations." On the basis of the administrative hearing, and without an evidentiary hearing or oral argument, the superior court rejected these contentions on April 13, 1999, and denied the petition. After his motion for new trial was denied, petitioner filed this timely notice of appeal.

---

[4]The letter also advised petitioner that his applications to renew his machine gun license and permit and his tear gas permit had been granted but that renewal of his short-barreled shotgun/rifle permit and his destructive device permit were also denied. The denial of these latter two permits was later withdrawn by respondent and is not at issue.

[5]Under section 975.5 of title 11 of the Code of Regulations, an assault weapon permit may be revoked for, among other things, use of such weapons for purposes other than those specifically permitted, the violation of conditions stipulated in the permit, or violations of any law punishable as a felony. Under section 975.2 an application to renew an assault weapon permit may be denied for any of the reasons specified in section 975.5.

## DISCUSSION

Petitioner presents two main arguments, which he advances in the alternative. His primary contention is that the ALJ and the trial court misinterpreted the AWCA in two respects. According to petitioner, persons granted permits under section 12286, such as himself, are exempt from the registration requirements of section 12285 and therefore his acquisition, possession and sale of unregistered weapons did not violate the Act. Petitioner also maintains that the AWCA does not bar the consignment sale of assault weapons registered to other persons, because he acquired these weapons in transactions that "amounted to sales in which title to the assault weapons indeed passed to [petitioner] when his customers transferred the weapons to him." Since, on this theory, petitioner legally owned the weapons in question, he claims he did not violate provisions of section 12285 implying that licensed gun dealers may not acquire and hold for sale registered assault weapons belonging to others.

Petitioner's alternative argument is that if it is determined that the trial court properly construed the AWCA then the AWCA is unconstitutionally vague and therefore void, because it provides insufficient notice as to what it prohibits.

Before we address petitioner's arguments, it is useful to generally describe the AWCA, focussing upon those aspects of the regulatory scheme at issue here.

The AWCA is "a remedial law aimed at protecting the public against a highly serious danger to life and safety." (*In re Jorge M.* (2000) 23 Cal.4th 866, 880 [98 Cal.Rptr.2d 466, 4 P.3d 297].) The origins and legislative history of the Act were reviewed in detail by the Supreme Court in *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 482-487 [97 Cal.Rptr.2d 334, 2 P.3d 581], and therefore need not be reiterated. The purpose of the measure is reflected in the legislative finding and declaration "that the proliferation and use of assault weapons poses a threat to the health, safety, and security of all citizens of this state. The Legislature has restricted the assault weapons specified in Section 12276 based upon finding that each firearm has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings. It is the intent of the Legislature in enacting this chapter to place restrictions on the use of assault weapons and to establish a registration and permit procedure for their lawful sale and possession. It is not, however, the intent of the Legislature by this chapter to place restrictions on the use of those weapons which are primarily

designed and intended for hunting, target practice, or other legitimate sports or recreational activities." (§ 12275.5.)

To achieve its restrictive purposes, "[t]he AWCA, inter alia, requires registration of assault weapons, sets time periods for such registration, prohibits the possession of unregistered assault weapons, restricts the circumstances under which even registered assault weapons may be possessed (including a prohibition on their possession by minors) and allows exceptions to these restrictions by permit on good cause shown." (*In re Jorge M, supra,* 23 Cal.4th at p. 871.)

The provisions of the AWCA that bear most directly on the case before us are the following.

Sections 12276, 12276.1 and 12276.5 define banned and restricted "assault weapons" in several ways. Section 12276 identifies designated semi-automatic rifles, pistols and shotguns by type, series and model. Section 12276.1 further defines such a firearm generically, as a semiautomatic rifle, pistol or shotgun that possesses one or more of a variety of specified features. Section 12276.5 provides that upon the request of the Attorney General, superior courts in metropolitan counties may suspend the manufacture, sale, distribution, transportation, or importation into the state, or the giving or lending of "a firearm alleged to be an assault weapon within the meaning of section 12276" because it is merely a variation of the weapons designated in section 12276, or the same weapon but manufactured or sold by another company, or which are new models manufactured or sold by any company with only minor modifications or new model numbers designed to circumvent the prohibitions of the AWCA.[6] The parties have stipulated that the firearms petitioner possessed for sale that were the basis for the denial of his application to renew his permit are all "assault weapons" within the meaning of the foregoing statutes.

Section 12280 provides in subdivision (a) that, with certain exceptions, any person who manufactures, distributes, transports, imports into the state,

---

[6]Section 5 of Statutes and Amendments to the Codes 1989 chapter 19, pages 69-70, states that "[t]he Legislature finds and declares that the weapons enumerated in Section 12276 of the Penal Code are particularly dangerous in the hands of criminals and serve no necessary hunting or sporting purpose for honest citizens. It is the intent, therefor, to ban the weapons enumerated in Section 12276 of the Penal Code and any other models which are only variations of these weapons, which are the same weapon but manufactured or sold by another company under a licensing agreement, or which are new models manufactured or sold by any company with just minor modifications or new model numbers in order to circumvent the prohibitions of Chapter 2.3 (commencing with Section 12275) of Title 2 of Part 4 of the Penal Code." The reason the Legislature supplemented the list of specific assault weapons banned by the Act with a generic definition of assault weapons that are not banned but restricted is discussed in *Kasler v. Lockyer, supra,* 23 Cal.4th at pages 485-488.

sells, gives or lends an assault weapon, except as specifically authorized to do so by the AWCA, is guilty of a felony and may be punished by imprisonment for four, six or eight years. Subdivision (b) provides that, again with certain exceptions, anyone who merely possesses an assault weapon is guilty of a public offense punishable by imprisonment. Department of Justice regulations on dangerous weapons (Cal. Code Regs., tit. 11, § 970 et seq.) provide that violation of any law punishable as a felony may provide the basis for the denial of an application to renew an assault weapon permit. (*Id.*, §§ 975.2, subd. (c) 975.5, subd. (a)(7).)

The prohibitions set forth in subdivisions (a) and (b) of section 12280 do not apply to possession of an assault weapon by certain peace officers or retired peace officers (§ 12280, subds. (g), (i)), to the executor or administrator of an estate that includes a registered assault weapon (§ 12280, subds. (*l*), (m)), to the lending of a registered assault weapon to another person and the return thereof under certain circumstances (§ 12280, subds. (n), (o)), and to the possession and importation of an assault weapon into the state by a nonresident if specified conditions are met (§ 12280, subd. (p)). Persons acting in accordance with the registration requirements of section 12285, and persons who hold permits under section 12286 or gun licenses under section 12290 and act in accordance with those statutes, are also exempt from the prohibitions of subdivisions (a) and (b) of section 12280. (§ 12280, subds. (q)-(t).)

The particular provisions of the AWCA most central to this case are sections 12285 through 12289, which relate to registration and permits. As will be seen, the difficulty this case presents arises out of the legislative failure to clearly spell out the relationship between the registration requirements of section 12285 and the permit process established pursuant to section 12286.

Section 12285, a lengthy and complex provision, appears to have been designed to ensure the registration of all, or at least most, assault weapons. Subdivision (a) essentially provides as follows: Persons lawfully possessing an assault weapon prior to June 1, 1989, must register the firearm with the Department of Justice by June 1, 1991, and persons lawfully possessing such a weapon prior to the date it was specified as an assault weapon under section 12276.5 must register it within 90 days of that determination.[7] Except as provided in section 12280, any person who lawfully possessed an

---

[7] "The registration shall contain a description of the firearm that identifies it uniquely, including all identification marks, the full name, address, date of birth, and thumbprint of the owner, and any other information the department may deem appropriate." (§ 12285, subd. (a).)

assault weapon prior to the date it was declared or specified as an assault weapon pursuant to sections 12276.1 and 12276.5 shall register the firearm within one year of the effective date of section 12276.1. Subdivision (b) states that after January 1, 1990, a registered assault weapon may not be sold or transferred to anyone within the state other than a licensed gun dealer, though such a weapon may also be relinquished to a law enforcement agency, as provided in section 12288. Anyone who obtains title to a registered assault weapon, as by bequest, or who lawfully possessed a firearm subsequently declared to be an assault weapon under section 12276.5, or subsequently defined as such a weapon under section 12276.1, shall within 90 days either render the weapon permanently inoperable, sell it to a licensed gun dealer, obtain a permit from the Department of Justice, or remove the weapon from the state. One who lawfully possessed a firearm subsequently declared to be an assault weapon under section 12276.5 may alternatively register the firearm within 90 days of the declaration. A person who moves into the state and is in lawful possession of an assault weapon must either first obtain a permit from the Department of Justice or deliver the weapon to a licensed gun dealer. If the person thereafter obtains a permit the weapon may be returned to him or her by the licensed gun dealer; otherwise the gun dealer must hold or dispose of the weapon in the manner prescribed by other provisions of the AWCA.

Subdivision (c) of section 12285 provides that one who has registered an assault weapon may possess it only under specified conditions unless a permit allowing additional uses is first obtained under section 12286. The specified conditions are that the weapon be used only at the registrant's residence, place of business, or other property owned by the registrant, or on property owned by another with that person's express permission; or while on the premises of certain target ranges or shooting clubs; or "while attending any exhibition, display, or educational project . . . sponsored by, conducted under the auspices of, or approved by a law enforcement agency or a nationally or state recognized entity that fosters proficiency in, or promotes education about, firearms"; or while on publicly owned land if the possession and use of assault weapons is specifically permitted by the managing agency; or while transporting the assault weapon between any of the aforementioned places. (§ 12285, subd. (c)(1)-(7).) Subdivision (c) is relevant to this case because it does not authorize the sale of assault weapons. Because he wished to engage in such sales, petitioner was required to, and did, obtain an assault weapon permit under section 12286 specifically authorizing him to engage in retail sales.

Other significant provisions of section 12285 are subdivision (d), which states that an assault weapon may not be registered or possessed by a minor,

a person prohibited by other provisions of the Penal Code from possessing weapons, or by certain persons receiving treatment for or suffering from mental disorders. Subdivision (f) establishes a 90-day forgiveness period to allow certain persons to register assault weapons they lawfully possessed prior to June 1, 1989. Subdivision (h) provides that persons who register within that forgiveness period, and certain others who register weapons they earlier possessed after January 1, 1991, shall not be charged with a violation of the AWCA "if law enforcement becomes aware of that violation only as a result of the registration of the assault weapon."

Section 12286, which relates to assault weapon permits, consists in material part of the following sentence: "Any person who lawfully acquired an assault weapon before June 1, 1989, and wishes to use it in a manner different than specified in subdivision (c) of Section 12285, any person who lawfully acquired an assault weapon between June 1, 1989, and January 1, 1990, and wishes to keep it after January 1, 1990, . . . shall first obtain a permit from the Department of Justice . . . ."

Because he wished to engage in retail sales of assault weapons to law enforcement agencies and out-of-state dealers, and provide such weapons for use in motion pictures or television productions, and these activities are not authorized under subdivision (c) of section 12285, petitioner applied for and received a permit allowing such additional uses. As earlier noted, his permit stipulated that it "issued for use in commercial motion picture and television productions [and] for the purpose of retail sales."

1. *Standard of Review.*

The pertinent facts are undisputed. ■ The statutory and constitutional questions we must resolve, identical to those raised below, present pure questions of law and are therefore subject to this court's independent determination. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 544 [35 Cal.Rptr.2d 574].)

2. *Petitioner's Assault Weapon Permit Does Not Exempt Him from the Registration Requirement.*

■ In finding that petitioner's sales of unregistered assault weapons violated the AWCA, the trial court reasoned that "§ 12290(a) allows a licensed gun dealer 'who lawfully possesses an assault weapon pursuant to Section 12285' to 'transport the weapon between dealers or out of the state,

display it at any gun show licensed by a state or local governmental entity, sell it to a resident outside the state, or sell it to a person who has been issued a permit pursuant to Section 12286.' However, since it appears that petitioner did not lawfully possess the unregistered assault weapons, he was not entitled to sell them to an out-of-state gun dealer."

In the eyes of the parties, the correctness of this determination relates to whether the chief device through which the Legislature intended to control the traffic in and use of assault weapons is the registration requirement, as the Department of Justice maintains, or the permit process, as petitioner argues. Petitioner's argument that he did not violate the registration requirement rests in substantial measure on the theory that it is not essential to the regulatory scheme for the holder of an assault weapon permit, particularly one such as himself who is also a licensed gun dealer, to register the assault weapons he possesses for sale.

Due to the confusing nature of important operative provisions of the AWCA,[8] this argument cannot easily be dismissed. To begin with, nowhere in the AWCA does the Legislature *explicitly* declare that after the effective date of the Act all assault weapons must be registered, and some provisions arguably suggest that certain persons may lawfully possess unregistered assault weapons, and that holders of an assault weapon permit or a licensed gun dealer may lawfully acquire such unregistered weapons. For example, section 12280 states, inter alia, that its prohibitions shall not apply to "[a] person acting in accordance with Section 12286 . . ." (§ 12280, subd. (r)(2)), and section 12286 does not explicitly provide that persons who hold permits under that section remain subject to the restrictions set forth in section 12285. Section 12286 simply states that persons who lawfully acquired an assault weapon prior to June 1, 1989, and wish to use it in a manner different from the uses specified in subdivision (c) of section 12285, and "any person who wishes to acquire an assault weapon after January 1, 1990, shall first obtain a permit from the Department of Justice . . . ." This provision is not by its terms limited to the acquisition of *registered* assault weapons. At the same time, subdivision (b)(2) of section 12285, the only provision of the AWCA that expressly applies to persons moving into this state after the effective date of the Act, states that such a person who lawfully possessed an assault weapon before coming into California may bring it into the state if he or she either first obtains a permit or delivers it to a licensed gun dealer. If the person delivers the firearm to a licensed gun dealer and thereafter obtains a permit, "the dealer shall redeliver that assault weapon to the person." (§ 12285, subd. (b)(2)(B).) Nowhere in section

---

[8]The confusion the AWCA creates is also evident in the split decision of the Supreme Court in *In re Jorge M., supra,* 23 Cal.4th 866.

12285 or in any other provision of the AWCA does the Legislature explicitly require persons who move into California after the effective date of the Act and who then possess or later acquire assault weapon permits to register the assault weapon they lawfully possessed and brought into the state. Similarly, persons who obtain assault weapons through bequest or intestate succession are also not specifically required to register the firearm as a condition of lawful possession, and are authorized to sell such a firearm to a licensed gun dealer (if they do not render the weapon permanently inoperable or obtain a permit for its use). (§ 12285, subd. (b)(1).) Finally, the AWCA authorizes holders of permits to purchase new and therefore presumably unregistered assault weapons from certain manufacturers. (§ 12287, subd. (a)(2).)

Petitioner claims the foregoing exceptions to the registration requirement show that section 12285 is actually peripheral to the regulatory scheme. According to petitioner, section 12285 merely defines "an initial process of 'grandfathering' assault weapons" legally possessed by qualified persons prior to June 1, 1989, the date specified in subdivision (a) of section 12285, which petitioner refers to as "the Grandfather Date." Such persons were required by subdivision (a) to register their weapons no later than January 1, 1991. After January 1, 1990, such a registrant could dispose of the weapon only by selling or transferring it to a licensed gun dealer or by relinquishing it to a law enforcement agency. (§ 12285, subd. (b)(1).) Petitioner maintains that section 12285 does little more than provide for "a time-limited initial census of grandfathered assault weapons and impos[es] restrictions on those brought forward for registration." Asserting that the pool of grandfathered assault weapons will shrink over time as registrants die or dispose of their assault weapons, petitioner argues that the assault weapons to which the registration requirement applies are increasingly insignificant. Petitioner claims that, at the same time, there is a "growing multitude of unregistered assault weapons" in California, which consists of (1) registrable weapons that were not brought forward for registration by their owners during the statutorily prescribed period, (2) weapons not earlier registered because they did not then qualify for registration, and (3) assault weapons manufactured or brought into California only after expiration of the registration period prescribed by section 12285. According to petitioner, the AWCA relies on Department of Justice permittees and licensed gun dealers (who, as in his case, may also be permittees) to "track and control" this pool of assault weapons. As petitioner sees it, the holders of assault weapon permits and licensed gun dealers are "the cornerstones of the AWCA for regulating assault weapons . . . . As the pool of registrants dwindles over time, the legitimate civilian possession and transfer of assault weapons will increasingly become the nearly exclusive domain of [assault weapon] Permittees." Petitioner buttresses this argument by pointing out, as we already have, that

section 12286 places no restriction on the assault weapons that the holder of a permit may acquire after January 1, 1990, and claiming that such permittees "thereby have the power to acquire the widening multitude of assault weapons which never were registered or never could have been." Moreover, he adds, it is appropriate to give the holders of permits and licensed gun dealers the regulatory responsibility he posits, because such persons are rigorously investigated, annually re-screened, and required to maintain detailed records of the assault weapons with which they deal, and to disclose such records to law enforcement upon request. (See Cal. Code Regs., tit. 11, §§ 972-975.5.) Petitioner also emphasizes, finally, that the assault weapon permit issued him by respondent also contains no explicit prohibition on the acquisition, possession or transfer of unregistered assault weapons. In short, because the regulatory scheme does not need to restrict holders of assault weapon permits and licensed gun dealers to registered weapons, and the AWCA does not explicitly impose any such restriction on these permittees and licensees, petitioner concludes that his possession and sales of such unregistered assault weapons do not violate the Act.

Needless to say, respondent reads the AWCA very differently. "Although the AWCA is commonly considered as a type of ban on firearms," respondent states, "in actuality, its core provision, or method of controlling evils associated with [assault weapons] is the registration process. All weapons in the state held by private citizens which are not registered before the specified deadlines are deemed to be unlawful contraband." In support of this argument, respondent points to subdivision (b) of section 12280 which provides that "any person who, within this state, possesses any assault weapon, except as provided in this chapter [i.e., sections 12275-12290], is guilty of a public offense . . . and shall be punished by imprisonment in the state prison, or in a county jail . . . ." Respondent also relies on subdivision (b)(1) of section 12285 which, as noted, provides that after January 1, 1990, no assault weapon "possessed pursuant to this section" may be sold or transferred to anyone in the state other than a licensed gun dealer. Respondent claims that the clear implication of this language is that *unregistered* assault weapons may not be sold or transferred—even to a licensed gun dealer.

While cognizant that several exceptions to the registration requirement could be inferred from the language of section 12285, we think that on balance respondent advances the stronger argument. We do not conceive the registration and permit procedures as alternative ways in which to place restrictions on the use of assault weapons; nor do we perceive any conflict in these procedures. As respondent points out, a permit attaches to a person and may be altered by changing the permitted conduct. Registration, on the other

hand, attaches to a weapon, and never changes while the registered weapon remains in the state. Because licensed gun dealers control the commerce in dangerous weapons, relieving them of the registration requirement could significantly obstruct the state regulatory scheme.[9] As stated in a bulletin sent by respondent on June 4, 1993 "to all interested parties," the registration requirement was also designed "to provide an affirmative defense for those persons who lawfully possessed an 'assault weapon' prior to the date that weapon was restricted by the AWCA."

■ It is elementary that "the words of a statute or, to use the alternative approach favored by many courts, the intent of the Legislature, can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part." (*Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575], fn. omitted.)

■ Though some of the operative provisions of the AWCA are unclear, the restrictive purpose of the Act is plain. Petitioner's interpretation of the AWCA is unacceptable not only because he extracts section 12286, the provision relating to permits, from the entire enactment in which it appears, considering it as if in a vacuum, but also because he relies not upon the words of that statute but its silence. The primary, albeit not the only, purpose of section 12286, as we understand it, is to require that persons who lawfully possess an assault weapon and wish to use it in a manner different from the normal uses allowed under subdivision (c) of section 12285, first obtain a permit. From the fact that section 12286 does not explicitly state that those who obtain the necessary permit remain subject to the registration requirements specified in section 12285, petitioner infers an exemption from those requirements; but this interpretation conflicts with the general rule "that a court is not authorized in the construction of a statute, to create exceptions not specifically made. If the statute announces a general rule and makes no exception thereto, the courts can make none. [Citations.]" (*Stockton*

---

[9]According to data obtained by the federal Bureau of Alcohol, Tobacco and Firearms, almost 60 percent of guns used in crime in the United States are acquired from a relatively small group of licensed gun dealers by so-called straw purchasers who, often with the knowledge of the dealer and sometimes his or her active involvement, purchase the weapon in order to pass it on to persons legally prohibited from purchasing such weapons. (Butterfield, *Guns: The Law as Selling Tool*, N.Y. Times (Aug. 13, 2000) Week in Review, p. 4.) Because violations of federal law by the dealers who facilitate such improper sales are punishable only as misdemeanors, they are rarely prosecuted by federal authorities. (*Ibid.*) This impediment to the enforcement of federal gun laws justifies strict enforcement of state restrictions—such as registration requirement of the AWCA—also designed to discourage improper sales by licensed gun dealers. A licensed gun dealer in California is presumably less likely to engage in the improper sale of a registered firearm than one that is unregistered.

*Theatres, Inc. v. Palermo* (1956) 47 Cal.2d 469, 476 [304 P.2d 7].) Section 12285 can be seen as articulating a general rule requiring registration.

It is true, as we have said, that subdivision (b)(2) of section 12285 arguably exempts certain persons from the registration requirement, but petitioner is not within any such exemption. While the prohibitions of section 12280 do not apply to holders of assault weapon permits and licensed gun dealers who act in accordance with sections 12286 and 12290 (§ 12280, subd. (r)(1), (2)), sections 12286 and 12290 do not relieve such permittees and licensees of the registration requirements of section 12285. If such persons could acquire and sell unregistered assault weapons, those who possess such firearms would have less reason to register them, which would undermine one of the central purposes of the AWCA.

We cannot agree with petitioner that, as interpreted by the Attorney General and the court below, section 12285 would create the dangerous regulatory lacunae that assertedly can be filled only if the holders of assault weapon permits are given the responsibility to "track and control" the disposition of unregistered assault weapons. For one thing, petitioner has offered no evidence to support his bare assertion that there is a "growing multitude of unregistered assault weapons" in California. Furthermore, it is difficult to imagine that the Legislature intended enforcement of the AWCA to be controlled by holders of assault weapon permits or licensed gun dealers, whose economic interests might very well conflict with the Legislature's restrictive interests. It is true, as we have repeatedly acknowledged, that there are some exceptions to the registration requirement, but we do not believe they make it impossible for a licensed gun dealer to determine whether a person who desires to sell him or her an unregistered weapon is within one of those exceptions—because, for example, he lives in or just moved from another state or obtained the unregistered weapon through bequest or intestate succession—and we believe the Act imposes on dealers a duty to make such an inquiry.

The exemption petitioner imputes to the AWCA—which would facilitate the traffic in unregistered assault weapons difficult to track and control—offends the salutary principle of statutory construction that " 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration . . .' " (*People ex rel. S. F. Bay etc. Com. v. Town of Emeryville* (1968) 69 Cal.2d 533, 543 [72 Cal.Rptr. 790, 446 P.2d 790]), and a statute must therefore be read "in light of the evils which prompted its enactment and the method of control which the Legislature chose. [Citation.]" (*People v. Vega* (1995) 33 Cal.App.4th 706, 709-710 [39 Cal.Rptr.2d 479].) The four unregistered assault weapons petitioner admits

he acquired, possessed and sold—H&K (Heckler & Koch) Model 91 and Colt Model AR-15 semiautomatic weapons—are among the assault weapons enumerated in section 12276 which, because they "are particularly dangerous in the hands of criminals and serve no necessary hunting or sporting purpose for honest citizens," the Legislature assertedly intended to ban. (Stats. 1989, ch. 19, § 5, p. 70.)[10] ▮ No provision of the AWCA authorizes holders of an assault weapon permit or licensed gun dealers to possess and sell unregistered weapons. The fact that section 12286 does not explicitly require the holders of assault weapon permits to comply with the general restrictions imposed under section 12285, and the fact that petitioner's permit does not explicitly restrict the retail sales it authorizes to registered assault weapons, provide no basis upon which to relieve persons who hold an assault weapon permit of the registration requirements that apply generally to all who possess such firearms. Accordingly, we conclude that the trial court properly ruled that petitioner violated the Act, and that respondent's refusal to renew his permit on that basis was therefore justified.

3. *Petitioner's Consignment Sales of Assault Weapons Violated the Act.*

David Morentz, a police officer for the City of Hercules, testified at the administrative hearing that he "put on consignment" to petitioner two assault weapons he lawfully possessed and registered, so that petitioner could "sell them for me." He and petitioner did not enter into any sales contract, but he received a receipt for the consigned weapons. Morentz testified that he did not offer to sell the weapons to petitioner, because "[i]f I sell the weapons outright [to a gun dealer], the price that I would get would be substantially lower since they would have to be putting money out up front for a weapon they don't know whether they can sell or how much they can sell it for." Evidence also showed that Mike Papac transferred four registered assault weapons to petitioner for consignment sale to others. Unlike Morentz, Papac not only registered the weapon but also held an assault weapon permit authorizing him to provide such firearms for use in making commercial motion picture and television productions.

Petitioner testified that he engaged in consignment sales of assault weapons because "we can't afford to buy something in the normal course of our business that we don't know how long it's going to take [to sell], especially something so restricted in the way it has to be sold. [¶] So as opposed to buying it for 50 percent of its value right out, we take it with no intention of giving it back to the person who's turning it into us. We take it with them

---

[10]As the Attorney General acknowledges, this uncodified language is misleading, as the AWCA does not truly ban any assault weapons, but simply restricts the possession, disposition, and use of such firearms.

having to bear the weight of the length of time to sell the weapons." Petitioner stated that when a weapon was transferred to him for consignment "[w]e logged it into our books as belonging to us and they awaited payment." Most transferors did not want the weapon returned, petitioner testified, but he claimed that "if they did want them back, what they would have to do under federal law and state law is fill out the dealer record of sale and wait the ten days and fill out the appropriate paperwork on background investigation and so on." ■ Petitioner states that he "deemed the weapons to belong to his business and had every intention to sell them, as his own, to out-of-state dealers." Thus, he argues, "[t]he fact that [petitioner] and his customers informally referred to their transactions as 'consignments' does not detract from the actual character of these transactions as sales."

This manifestly untenable argument, which would allow the proper characterization of a transaction as a sale or consignment to turn on the post hoc declaration of the previously unrevealed intent of one party, requires little discussion. The sole authority petitioner musters for his position is the following statement from Witkin: "A contract establishing an 'agency' with the exclusive privilege of selling a particular product may, despite such designation, amount to a sale instead of a mere agency or consignment. If the person contracts to buy goods from another to sell as his own, there is a sale, and he is liable to the other as a debtor for the price; whereas if he takes the goods as the property of the principal, subject to the latter's control and right of recall, and the latter has the right to receive the proceeds when sold less the agent's commission, there is an agency." (3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, § 2, p. 14, italics omitted.) This statement of the law supports respondent, not petitioner, as petitioner did not contract with those from whom he received assault weapons to sell them as his own, and he admitted he took the firearms subject to the transferor's right of recall. A consignment for sale is a form of bailment, and as Witkin points out, "[a] bailment is usually clearly distinguishable from a sale. [Citations.]" (*Id.* at § 1, p. 13.)

Witkin acknowledges that there is a superficial resemblance between a bailment with an option to buy and a sale with an option to return. The principal test, he states, "is whether there was a binding promise, on the part of the person to whom the possession was given, to pay for the goods. If so, it is a sale, title passing at once, subject to the right of return. If not, it is a mere bailment, and no title passes until the option to buy is exercised." (3 Witkin, Summary of Cal. Law, *supra*, Sales, § 1, at p. 14.) A sale with an option to return cannot be concocted in this case, because petitioner never made a binding promise to pay for the assault weapons he received from those who transferred them to him in transactions mutually referred to as

consignments. The only duty petitioner can be deemed to have accepted is to try to find buyers for the consigned weapons, in which case he retained 10 percent of the purchase price and returned the remainder to the consignor. While petitioner may have treated these weapons as if he held title to them while he sought buyers, he clearly did not; title remained in the hands of the consignors, as evidenced by the receipts they received from petitioner. Moreover, the impediments to returning a consigned assault weapon to its owner that petitioner conjures to support his theory of ownership are unsupported by any citation to federal or state law and are, so far as we can tell, imaginary. The return of a consigned assault weapon to its lawful owner seems to us not very different from the return by a borrower of such a firearm to the lawful owner who lent it, which is not subject to the prohibitions of section 12280. (§ 12280, subd. (n)(2).) Nor, so far as we are aware, does any federal gun law significantly encumber the return of an assault weapon to one who owns and may lawfully possess the firearm.

In a footnote, petitioner argues that even if we agree with the trial court that he accepted assault weapons on a true consignment basis, he cannot be found to have violated the AWCA because section 12286 does not restrict how the holder of an assault weapon permit "wish[ing] to acquire an assault weapon after January 1, 1990" may do so. We reject this argument because, as we have already said, the failure of one section of the Act to reiterate a restriction imposed in another section does not relieve a person subject to both sections of the restriction. Petitioner also contends in this footnote that section 12285, subdivision (b)(1), contemplates that licensed gun dealers may take possession of registered assault weapons on a consignment basis, because it states that such firearms "may be sold or transferred" to such a person by one who lawfully possesses them. Consignment is therefore authorized, petitioner concludes, because even if a consignment is not a sale it is indisputably a transfer. This argument misconstrues the statute because it ignores the rest of the sentence in which quoted phrase appears. The sentence states in its entirety as follows: "Except as provided in paragraph (2) [which relates to certain persons moving into the state], no assault weapon . . . may be sold or transferred on or after January 1, 1990, to anyone in this state other than to a licensed gun dealer, as defined in subdivision (c) of Section 12290 [defining the term 'licensed gun dealer'], or as provided in Section 12288 [which provides that any individual 'may relinquish an assault weapon to a police or sheriff's department']." As used in this sentence, the verb "transfer" refers only to the relinquishment of assault weapons to law enforcement agencies. Since consignments are neither sales nor relinquishments, they are unauthorized by section 12285.

Nor is the consignment of assault weapons permitted by section 12290, which specifies the manner in which licensed gun dealers may transport,

display, service or repair, or sell such firearms. While this statute authorizes licensees to sell assault weapons "to a resident outside the state, or . . . to a person who has been issued [an assault weapon] permit," the only such weapons he may sell to these persons are those he lawfully possesses under section 12285. (§ 12290, subd. (a).) Section 12285 does not authorize anyone but the registered owner of an assault weapon to possess or keep it at a place of business; and the statute does not even allow a registered owner to sell such a weapon unless he or she first obtains a permit allowing such a use. It is true petitioner's permit authorizes retail sales of assault weapons, and that, in the abstract, the phrase "retail sales" may be ambiguous as to whether it includes consignment sales,[11] but the authorization to engage in retail sales cannot be deemed to exempt petitioner from the requirement of section 12285 that he otherwise lawfully possess and personally register the assault weapons he is permitted to hold for retail sale.

We reject petitioner's remaining claim, that consignment is consistent with the AWCA because it is not prohibited by section 12286, for the same reasons we earlier rejected his contention that the Act authorizes the holders of assault weapons to sell unregistered weapons. The silence of the provision establishing the permit process as to matters dealt with in other provisions of the Act does not constitute authority to do things inimical to the purpose of the entire enactment. Under the AWCA, the only ways in which persons such as Morentz and Papac could lawfully dispose of such firearms in this state would be to sell them to a licensed gun dealer, as defined in subdivision (c) of section 12290, or relinquish them to a law enforcement agency, as provided in section 12288. (§ 12285, subd. (b)(1).)

4.  *Respondent Did Not Violate Petitioner's Due Process Right.*

Petitioner's due process claim is confusing because it consists of two distinct contentions that are insufficiently differentiated. The first contention is that the AWCA is so unclear on its face as to what it either forbids or requires that it is constitutionally void for vagueness. The second, which we understand to be advanced in the alternative, is that respondent Department of Justice, which administers the AWCA, did not provide petitioner (and others) fair and reasonable notice of its interpretation of the Act. The trial court did not explicitly address the first claim, apparently deeming it enough to reject the second.

In its judgment and order denying a writ of mandate, the court stated that petitioner failed "to show respondent had some duty to explain its interpretation of the Assault Weapons Control Act to petitioner, or that an administrative agency must alert persons to the agency's interpretation of a law

---

[11]Department of Justice regulations on dangerous weapons that pertain directly to retail sales of such firearms (Cal. Code Regs., tit. 11, §§ 972, subds. (c)(1), 972.4), do not define the phrase or otherwise suggest it does not include consignment sales.

before that interpretation may be enforced, or that respondent's failure to explain its interpretation of the Act constitutes a violation of his due process rights."

In making this determination the court relied on *Transamerica Occidental Life Ins. Co. v. State Board of Equalization* (1991) 232 Cal.App.3d 1048 [284 Cal.Rptr. 9] (*Transamerica*), a tax refund action brought by an insurance company concerning which of two tax rates applied to certain premiums under the Revenue and Taxation Code. The insurer contended, inter alia, that the Department of Insurance and the Board of Equalization had earlier indicated that the lower rate applied, and that this advice, which it assertedly relied upon, supported its view of the statute, which was consistent with that earlier view. The Court of Appeal rejected this argument, stating that "[a]lthough equitable estoppel may apply to government actions where justice and right so require, 'estoppel will not be applied against the government if the result would be to nullify a strong rule of policy adopted for the benefit of the public [citations] or to contravene directly any statutory or constitutional limitations. [Citation.]' " (*Id.* at p. 1054, quoting *People ex rel. Franchise Tax Bd. v. Superior Court* (1985) 164 Cal.App.3d 526, 551 [210 Cal.Rptr. 695].) "Specifically," the court reiterated, " 'the state is not estopped from collecting a tax which was due and owing, even though the state's representatives may have previously adopted an incorrect interpretation of the law and advised the public that no taxes would become due on a particular transaction or transactions.' " (*Transamerica*, at p. 1055, quoting *Fischbach & Moore, Inc. v. State Bd. of Equalization* (1981) 117 Cal.App.3d 627, 632 [172 Cal.Rptr. 923].) The *Transamerica* court found that the plaintiff did not rely to its detriment on the government's conduct, noting, moreover, that the Board of Equalization (unlike the Department of Insurance) never told the plaintiff that the lower rate applied, but merely failed to object when it applied that rate. (*Ibid.*)

■ Although the present case does not involve a tax, it does involve enforcement of a strong rule of public policy adopted for the benefit of the public. We believe *Transamerica* and many of the cases it relied upon are authority for the proposition that respondent cannot be prevented from refusing to renew petitioner's assault weapon permit because respondent previously countenanced the conduct it now claims to be unlawful. It is also worth noting that in *Transamerica* the plaintiff had been affirmatively advised by the Department of Insurance that the lower rate applied; in this case respondent never told petitioner he could sell unregistered assault weapons or could sell weapons registered to others on a consignment basis, but merely failed to object to such conduct in the past. Petitioner's argument is therefore not as strong as that rejected in *Transamerica.*

■ The ruling below that respondent did not deprive petitioner of fair and reasonable notice of its interpretation of the AWCA, although correct, does not address petitioner's more fundamental claim that the Act itself is so vague as to what it either forbids or requires that it is constitutionally void. Petitioner predicates this argument on two cases, *Lanzetta v. New Jersey* (1938) 306 U.S. 451 [59 S.Ct. 618, 83 L.Ed. 888] and *People v. Mirmirani* (1981) 30 Cal.3d 375 [178 Cal.Rptr. 792, 636 P.2d 1130].

In *Lanzetta* the Supreme Court found that a New Jersey statute was so vague and uncertain as to be repugnant to the due process clause of the Fourteenth Amendment. The statute provided that " '[a]ny person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster . . .' " and may be punished by fine or imprisonment. (*Lanzetta v. New Jersey, supra,* 306 U.S. at p. 452 [59 S.Ct. at pp. 618-619].) Observing that the word "gang" has numerous and varied meanings and is undefined by the common law, the Supreme Court determined that the descriptions and illustrations used by the lower court to ascribe meaning to the word "are not sufficient to constitute definition, inclusive or exclusive." (*Id.* at p. 457 [59 S.Ct. at p. 621].) The court also found that "[t]he lack of certainty of the challenged provision is not limited to the word 'gang' or to its dependent 'gangster.' . . . The enactment employs the expression, 'known to be a member.' It is ambiguous. There immediately arises the doubt whether actual or putative association is meant. If actual membership is required, that status must be established as a fact, and the word 'known' would be without significance. If reputed membership is enough, there is uncertainty whether that reputation must be general or extend only to some persons. And the statute fails to indicate what it constitutes membership or how one may join a 'gang.' " (*Id.* at p. 458 [59 S.Ct. at p. 621].) Because the statute condemned no act or omission, and the terms it used were so "vague, indefinite and uncertain" (*ibid.*), the court concluded that it violated the due process clause of the Fourteenth Amendment.

*People v. Mirmirani, supra,* 30 Cal.3d 375, the other case petitioner relies upon, involved former provisions of the California Penal Code. Section 422 then prohibited threats made with the intent to terrorize, which was defined in section 422.5 as intimidation to achieve social or political goals. The trial court set aside the information and dismissed the prosecution of the defendant because there was no evidence to support a finding that the defendant made the threats to achieve social or political goals. The Supreme Court affirmed this ruling, holding that the phrase "social or political goals" contained in section 422.5 was unconstitutionally vague. The court pointed

out that the phrase has no established legal meaning and the dictionary definitions of the words "do not provide clear lines by which citizens, law enforcement officials, judges and juries can understand what is prohibited and what is not. [¶] The main problem with the statute is that it is all-inclusive. It is virtually impossible to determine what conduct by an individual in a democratic society could not in some way be construed as an attempt to achieve a 'social' or 'political' goal." (30 Cal.3d at p. 384)

As should be readily apparent, the claims in *Lanzetta* and *Mirmirani* are completely different from that made here. Petitioner does not contend that any particular word or phrase appearing in the AWCA is undefined in law and uncertain; his argument is instead that the Act itself, or at least the several provisions thereof relied upon here by respondent, taken as a whole, are so ambiguous and uncertain that persons bound by the AWCA are not on notice of what they are required to do or are prohibited from doing. We have no quarrel with petitioner's assertion that many of the provisions of the AWCA at issue in this case are ambiguous in certain respects; but we are also aware that "[m]any, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585].). Moreover, with the AWCA in mind, our Supreme Court recently stated that the fact "[t]hat a criminal statute contains one or more ambiguities requiring interpretation does not make the statute unconstitutionally vague on its face." (*In re Jorge M., supra*, 23 Cal.4th at p. 886, citing *People v. Askey* (1996) 49 Cal.App.4th 381, 386-387 [56 Cal.Rptr.2d 782].)

### DISPOSITION

For the foregoing reasons, the judgment below is affirmed.

Lambden, J., and Ruvolo, J., concurred.

A petition for a rehearing was denied January 30, 2001, and appellant's petition for review by the Supreme Court was denied April 11, 2001.