BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE VIRGINIA GENNARO, CITY PROSECUTING ATTORNEY, CITY OF BAKERSFIELD, has requested an opinion on the following question:
Is a person required to hold a license as a "secondhand dealer" if (1) he or she owns a "drop-off" store located within the state where secondhand tangible personal property is accepted for sale to be conducted on an internet auction website, (2) the property is held for display or in storage at the store or off the premises, (3) the property is advertised and sold by an internet auction website, (4) the store owner arranges for payment and delivery of the property sold, and (5) he or she charges the seller a fee for services rendered?
 CONCLUSION
A person is required to hold a license as a "secondhand dealer" if (1) he or she owns a "drop-off" store located within the state where secondhand tangible personal property is accepted for sale to be conducted on an internet auction website, (2) the property is held for display or in storage at the store or off the premises, (3) the property is advertised and sold by an internet auction website, (4) the store owner arranges for payment and delivery of the property sold, and (5) he or she charges the seller a fee for services rendered.
 ANALYSIS
The Legislature has enacted a comprehensive statutory scheme, the Secondhand Goods Law (Bus. Prof. Code, §§ 21500-21672; "Act")[1] to regulate the sale or other disposition of secondhand goods. (See Malish v. City of San Diego (2000)84 Cal.App.4th 725, 728; 79 Ops.Cal.Atty.Gen. 103 (1996); see also Fin. Code §§ 21000-21307 [pawnbrokers]; Pen. Code, §§ 12070-12094 [firearms sales].) A secondhand dealer must be licensed by the local chief of police or sheriff (§§ 21640-21642), report daily to the chief of police or sheriff information concerning "all tangible personal property which he or she has purchased, taken in trade, taken in pawn, accepted for sale on consignment, or accepted for auctioning" (§ 21628), including "[a] legible fingerprint taken from the intended seller or pledger" (§ 21628, subd. (g)), and "retain in his or her possession for a period of 30 days all tangible personal property reported . . ." (§ 21636, subd. (a)).[2]
Section 21626, subdivision (a), generally defines a "secondhand dealer" as follows:
 "A `secondhand dealer,' as used in this article, means and includes any person, copartnership, firm, or corporation whose business includes buying, selling, trading, taking in pawn, accepting for sale on consignment, accepting for auctioning, or auctioning secondhand tangible personal property. . . ."
We are asked whether a person meets the definition of a "secondhand dealer" for purposes of the Act if (1) he or she owns a "drop-off" store located within the state where secondhand tangible personal property is accepted for sale to be conducted on an internet auction website, (2) the property is held for display or in storage at the store or off the premises, (3) the property is advertised and sold by an internet auction website, (4) the store owner arranges for payment and delivery of the property sold, and (5) he or she charges the seller a fee for services rendered. We conclude that the store owner would be required to be licensed as a secondhand dealer in order to operate such a business in this state.
The type of business in question has come into existence in response to the rising popularity of online marketplace websites. Sales on these internet sites may be conducted either at a fixed price or through an auction. Using such websites as a venue, sellers create a listing of items to be sold, including a description of the items; set a fixed sales price for each or a minimum price for bidding; specify terms for payment and delivery; and, if the sales are to be conducted in an auction format, specify terms of the auction such as its duration and a reserve price. Buyers may browse through the items offered for sale, buy or bid on the items, and communicate with the sellers to arrange for payment and delivery. (See 86 Ops.Cal.Atty.Gen. 48, 49 (2003).)
When a sale is conducted by way of an auction, the actual bidding process is administered by use of proprietary software programs designed to recognize bids, alert bidders of the current bidding status, and notify the buyer and seller of the winning bid at the close of the auction period. Some programs also post bids automatically as a proxy for a would-be buyer, according to the buyer's specifications. (See 86 Ops.Cal.Atty.Gen., supra, at p. 52; Mackey, Limiting Exposure for Internet Vendors: Separating the Wheat from the Chaff (2003) 21 J. Marshall J. Computer 
Info. L. 207, 222-223 [discussing use of "electronic agents," permitted under Uniform Electronic Transactions Act]; Korybut, Online Auctions of Repossessed Collateral Under Article 9 (1999) 31 Rutgers L.J. 29, 100-112 [discussing differences between professional auctioneers and "virtual auctioneers"].)
The owner of a drop-off store provides a service to sellers by receiving items to be sold, consulting with the sellers about listing prices, photographing the items, creating written descriptions and selecting listing categories designed to attract buyers, communicating with the internet auction websites and prospective buyers as necessary, receiving payments, and arranging deliveries. In exchange for providing these services, the store owner receives a fee from the seller upon the sale of any item.
Returning to the language of section 21626, we have little doubt that the store owner falls within the definition of a "secondhand dealer." As described herein, the business arrangement between a prospective seller and the store owner amounts to "accepting for sale on consignment," thus bringing the business within the scope of section 21626. " `A true consignment constitutes an agency or bailment relationship between the consignor and consignee. The consignor, as principal retains the ownership, may recall the goods, and sets the sale price. The consignee (agent) receives a commission and not the profits of the sale.' " (Consolidated Accessories Corp. v. Franchise Tax Board (1984) 161 Cal.App.3d 1036, 1040; see Jackson v. Department of Justice (2001) 85 Cal.App.4th 1334, 1350-1351; Bank of California v. Thornton-Blue Pacific, Inc. (1997)53 Cal.App.4th 841, 847; Reiter v. Anderson (1927) 87 Cal.App. 642,649; see also Cal. U. Com. Code, § 2326, subd. (4); 3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, § 2.)
While the distinction between a sale and a consignment may at times be subtle (see Consolidated Accessories Corp. v. Franchise Tax Board, supra, 161 Cal.App.3d at pp. 1040-1041; Reiter v. Anderson, supra, 87 Cal.App. at pp. 648-649), for our purposes, the distinction is one without a difference. Section 21626 defines a secondhand dealer not only to include businesses that operate on consignment, but also to those that engage in sales, purchases, purchases in pawn, trades, and auctions of tangible personal property. Therefore, regardless of the details of the agreements between the prospective sellers and the store owner, we believe that the Act applies to anyone whose business includes accepting secondhand tangible property for sale to be conducted on an internet auction website, storing the property on or off the store premises, arranging for the sale of the property online, and charging a fee for the services rendered.
We reject the suggestion that the store owner would be exempt from the Act's requirements under the statutory exception for "auctioneers." Section 21626.5 provides:
 "`Secondhand dealer,' as used in this article, does not include either of the following:
 "(a) Any person who performs the services of an auctioneer for a fee or salary.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "
The term "auctioneer" is not specifically defined for purposes of the Act. It is, however, defined in Civil Code section1812.601, which is part of a statutory scheme (Civ. Code, §§ 1812.600-1812.609) regulating auctioneers and auction companies.[3] Civil Code section1812.601, subdivision (d), states:
 "`Auctioneer' means any individual who is engaged in, or who by advertising or otherwise holds himself or herself out as being available to engage in, the calling for, the recognition of, and the acceptance of, offers for the purchase of goods at an auction."[4]
A person who owns a drop-off store cannot reasonably be said to "recognize" bids as they are made in the course of an online auction. Instead, that function is customarily performed by proprietary software owned by the online marketplace website. (See 86 Ops.Cal.Atty.Gen., supra, at p. 52; see also Civ. Code, §1812.601, subd. (b).) A business of the type we are contemplating thus does not "perform the services of an auctioneer" within the meaning of section 21626.5, subdivision (a), and consequently a store owner would not be exempt from the Act's requirements as an "auctioneer."
Finally, we reject the further suggestion that the Act should not be applied to drop-off store owners because such application would not serve to further the purposes of the Act. Section 21625 describes the Legislature's purposes in regulating secondhand dealers as follows:
 "It is the intent of the Legislature in enacting this article to curtail the dissemination of stolen property and to facilitate the recovery of stolen property by means of a uniform, statewide, state-administered program of regulation of persons whose principal business is the buying, selling, trading, auctioning, or taking in pawn of tangible personal property and to aid the State Board of Equalization to detect possible sales tax evasion.
 "Further, it is the intent of the Legislature in enacting this article to require the uniform statewide reporting of tangible personal property acquired by persons whose principal business is the buying, selling, trading, auctioning, or taking in pawn of tangible personal property, unless the property or the transaction is specifically exempt herein, for the purpose of correlating these reports with other reports of city, county, and city and county law enforcement agencies and further utilizing the services of the Department of Justice to aid in tracing and recovering stolen property.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "
On the one hand, the online format may deter some criminals from attempting to sell stolen property over the internet where it can be readily identified by its owner, and some online auction websites may conduct their own aggressive efforts to detect and deter trade in stolen property. On the other hand, criminals may be attracted to using an internet drop-off store if it is exempt from the Act's requirements, particularly the requirements of providing of fingerprints and giving notice of the property to law enforcement officials. These conflicting considerations are best evaluated by the Legislature in establishing the scope of the Act's provisions. We believe that subjecting the operation of drop-off stores to the requirements of the Act serves the general legislative purposes of "tracing and recovering stolen property." (§ 21625.)
We conclude that a person is required to hold a license as a "secondhand dealer" if (1) he or she owns a "drop-off" store located within the state where secondhand tangible personal property is accepted for sale to be conducted on an internet auction website, (2) the property is held for display or in storage at the store or off the premises, (3) the property is advertised and sold by an internet auction website, (4) the store owner arranges for payment and delivery of the property sold, and (5) he or she charges the seller a fee for services rendered.
[1] All further statutory references are to the Business and Professions Code, unless otherwise indicated.
[2] Property stored off the premises must "be produced at the licensee's business premises within one business day of a request" by the chief of police or sheriff. (§ 21636, subd. (c).) With respect to the 30-day holding period, "[t]he chief of police or the sheriff may for good cause . . . authorize prior disposition of any property . . . ." (§ 21636, subd. (a).)
[3] Among other requirements, auctioneers and auction companies are required to maintain a $20,000 bond with the Secretary of State (Civ. Code, § 1812.600); abide by certain ethical requirements (Civ. Code, § 1812.605); make certain disclosures in auction advertisements, at the entrance to each auction, and to the audience of the auction (Civ. Code, § 1812.607); and conform their contracts to specific requirements (Civ. Code, § 1812.608)
.
[4] When two statutes deal with the same subject, as here, "the interpretation of similar sentences or phrases in one controls the interpretation of virtually the same phrases or sentences in the other." (In re Marriage of Pinto (1972) 28 Cal.App.3d 86, 89; see In re Phyle (1947) 30 Cal.2d 838, 845.)